1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.
Jeffrey I. Carton (*pro hac vice*)
jcarton@mdpcelaw.com
Jerome Noll (*pro hac vice*)
jnoll@mdpcelaw.com
Christine M. Ford (*pro hac vice* application to be submitted)
cford@mdpcelaw.com
1311 Mamaroneck Avenue
White Plains, New York 10605
Telephone:  (914) 517-5000
Facsimile:   (914) 517-5055

CALDWELL LESLIE & PROCTOR, PC
ROBYN C. CROWTHER, SBN 193840
crowther@caldwell-leslie.com
ERIC S. PETTIT, SBN 234657
pettit@caldwell-leslie.com
1000 Wilshire Blvd., Suite 600
Los Angeles, California  90017-2463
Telephone:  (213) 629-9040
Facsimile:  (213) 629-9022

Attorneys for Plaintiffs
and all others similarly situated

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REUBEN BERENBLAT, ANDREW PERSONETTE, EARL C. SIMPSON, LAURA MILLER, On behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendants. | Case No. C 08-4969 JF <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO APPLE INC.'S MOTION TO DISMISS** <br><br> **Date:** **August 14, 2009** <br> **Time:** **9:00 a.m.** <br> **Courtroom:** **3** |

CALDWELL
LESLIE &
PROCTOR

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................1

ISSUES TO BE DECIDED ...................................................................................2

FACTUAL BACKGROUND ..................................................................................2

    A.    Apple Manufactures and Sells Defective PowerBook G4s.................2

    B.    Plaintiffs Each Purchased a Defective Computer that Apple
        Refuses to Fix ........................................................................4

        1.    Reuben Berenblatt ................................................................4

        2.    Andrew Personette ...............................................................5

        3.    Earl "Duke" Simpson .........................................................5

        4.    Laura Miller ........................................................................6

    C.    Apple Continued to Sell PowerBooks with Knowledge of the
        Defect ...................................................................................6

ARGUMENT ........................................................................................................7

I.    THE APPLICABLE STANDARD FOR A MOTION TO DISMISS ...........7

II.    THE COMPLAINT STATES A CLAIM FOR BREACH OF THE
      IMPLIED WARRANTY OF MERCHANTABILITY ..................................7

    A.    California Courts Have Rejected Apple's Argument Limiting
        the Duration of Implied Warranties .......................................9

    B.    Apple's Reliance on Its Supposed Express Warranty Is
        Misplaced .............................................................................12

        1.    The Court Should Not Consider the Terms of Apple's
            Purported Express Warranty on a Motion to Dismiss ............13

CALDWELL
LESLIE &
PROCTOR

        2.      The Validity of the Supposed Disclaimer of Implied
                Warranties Raises Factual Questions that Cannot Be
                Resolved at the Pleading Stage ..................................................14

III.    THE COMPLAINT STATES A CLAIM UNDER CALIFORNIA'S
        UNFAIR COMPETITION LAW....................................................................17

        A.      Apple's Manufacture and Sale of Defective PowerBooks
                Constitutes an Unfair Business Practice in Violation of the
                UCL.................................................................................................17

        B.      Apple's Knowing Sale of a Defective Product Is Unlawful...............19

IV.     THE COMPLAINT ALLEGES A CAUSE OF ACTION FOR
        UNJUST ENRICHMENT..............................................................................19

CONCLUSION.................................................................................................21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CALDWELL
LESLIE &
PROCTOR

# TABLE OF AUTHORITIES

## CASES                                                                      Page(s)

*AICCO, Inc. v. Ins. Co. of N. Am.,*
   90 Cal.App.4th 579 (Cal. Ct. App. 2001)18, 20, 21

*Alberti v. General Motors Corp.,*
   600 F.Supp. 1026 (D.D.C. 1985) ...................................................... 17, 18, 19

*Oestricher v. Alienware Corp.,*
   544 F.Supp. 964 (N.D. Cal. 2008)................................................................. 11

*Ashcroft v. Iqbal,*
   129 S.Ct. 1937 (2009) ................................................................................. 12

*Atkinson v. Elk Corporation of Texas,*
   142 Cal. App.4th 212, 48 Cal.Rptr. 247 (Cal. Ct. App. 2006).............. 11, 12

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544, 127 S.Ct. 1955 (2007) .......................................................... 7

*Blennis v. Hewlett-Packard Co.,*
   2008 WL 818526 (N.D.Cal. Mar. 25, 2008) ........................................ 14, 19

*Bowdoin v. Showell Growers, Inc.,*
   817 F.2d 1543 (11th Cir. 1987) ................................................................... 15

*Brittalia Ventures v. Stuke Nursery Co., Inc.,*
   153 Cal.App.4th 17, 62 Cal.Rptr.3d 467 (Cal. Ct. App. 2007)........... 7, 8, 10

*Burr v. Sherwin Williams Co.,*
   42 Cal.2d 682, 268 P.2d 1041 (Cal. 1954) ................................................... 8

*Carlson v. General Motors Corporation,*
   883 F.2d 287 (4th Cir. 1989) ...................................................................... 15

*Cartwright v. Viking Indus., Inc.,*
   249 F.R.D. 351 (E.D. Cal. 2008) ............................................................ 7, 14

*Chamberlain v. Ford Motor Co.,*
   369 F.Supp.2d 1138 (N.D. Cal. 2005) ........................................................ 19

*Clemens v. DaimlerChrysler Corp.,*
   534 F.3d 1017 (9th Cir. 2008)..................................................................... 12

*Cole v. Asurion Corp.,*
   2008 WL 5423859 (C.D. Cal. Dec. 30, 2008) .......................................... 13

*Cooper v. Pickett,*
   137 F.3d 616 (9th Cir. 1997) ...................................................................... 13

*Cortez v. Purolator Air Filtration Prod. Co.,*
   23 Cal.4th 163 (Cal. 2000) ......................................................................... 19

CALDWELL
LESLIE &
PROCTOR

*Daugherty v. American Honda Motors Co., Inc.,*
    144 Cal.App.4th 824 (Cal. Ct. App. 2006) ........................................... 11, 12

*Dorfman v. International Harvester Co.,*
    46 Cal.App.3d 11 120 Cal.Rptr. 516 (Cal. Ct. App. 1975) ........................ 14

*Fed. Deposit Ins. Co. v. Dintino,*
    167 Cal.App.4th 333, 84 Cal.Rptr.3d 38 (Cal. App. Ct. 2008) ................... 19

*First Nationwide Savings v. Perry,*
    11 Cal.App.4th 1657 (Cal. Ct. App. 1992) ................................................. 20

*Garlock Technologies, LLC v. Nak Sealing Technologies Corp.,*
    148 Cal.App.4th 937, 56 Cal.Rptr.3d 177 (Cal. Ct. App. 2007) ................. 8

*Ghirardo v. Antonioli,*
    14 Cal.4th 39 (Cal. 1996) ......................................................................... 19

*Gilead Sciences Sec. Litig.,*
    536 F.3d 1049 (9th Cir. 2008) .................................................................... 7

*Hauter v. Zogarts,*
    14 Cal.3d 104, 534 P.2d 377, 120 Cal. Rptr. 681 (1975) ........................... 14

*Hewlett-Packard Co. v. Superior Court,*
    167 Cal.App.4th 87 (Cal. App. Ct. 2008) ................................................... 12

*Hicks v. Kaufman and Broad Home Corp.,*
    89 Cal.App.4th 908 (Cal. Ct. App. 2001) .................................................. 11

*Hirsch v. Bank of America, N.A.,*
    107 Cal.App.4th 708 (Cal. Ct. App. 2003) ................................................ 20

*Hoey v. Sony Electronics,*
    515 F.Supp.2d 1099 (N.D. Cal. 2007) ....................................................... 12

*Hughes Tool Co. v. Max Hinrichs Seed Co.,*
    112 Cal.App.3d 194 (Cal. Ct. App. 1980) .................................................. 14

*Kasky v. Nike, Inc.,*
    27 Cal.4th 939 (Cal. 2002) ........................................................................ 17

*Krieger v. Nick Alexander Imports, Inc.,*
    234 Cal.App.3d 205, 285 Cal.Rptr. 717 (Cal. Ct. App. 1991) ..................... 9

*Lazy Y Ranch Ltd. v. Behrens,*
    546 F.3d 580 (9th Cir. 2008) ...................................................................... 7

*Lectrodryer v. Seoulbank,*
    77 Cal.App.4th 723 (Cal. Ct. App. 2000)............................................. 18, 19

*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir. 2001) ..................................................................... 13

CALDWELL
LESLIE &
PROCTOR

*Lennar Homes, Inc. v. Masonite Corp.,*
   32 F.Supp.2d 396 (E.D.La. 1998) ............................................................ 15

*Lindberg v. Coutches,*
   167 Cal.App.2d Supp. 828, 334 P.2d 701 (Cal. Ct. App. 1959) .................. 8

*Long v. Hewlett-Packard Co.,*
   2007 WL 2994812 (N.D. Cal. July 27, 2007), aff'd,
   585 Fed. Appx. 585 (9th Cir 2009) ......................................................... 12

*Lozano v. AT&T Wireless Serv., Inc.,*
   504 F.3d 718 (9th Cir. 2007) ................................................................... 17

*LWT, Inc. v. Childers,*
   19 F.3d 539 (10th Cir. 1994) ................................................................... 15

*McKell v. Washington Mut., Inc.,*
   142 Cal. App.4th 1457 (Cal. Ct. App. 2006) .......................................17, 19

*Mexia v. Rinker Boat Co.,*
   ___Cal. Rptr. 3d___, 2009 WL 1651442 (June 15, 2009)................... 1, 8, 9

*Moore v. Hubbard & Johnson Lumber Co.,*
   149 Cal.App.2d 236, 308 P.2d 794 (Cal. Ct. App. 1957) ........................... 8

*Payne v. Fujifilm U.S.A, Inc., Civ. A.,*
   No. 07-385, 2007 WL 4591281 (D.N.J. Dec. 28, 2007) ........................... 15

*Plascencia v. Lending 1st Mortgage,*
   583 F.Supp.2d 1090 (N.D.Cal. 2008) ...................................................... 19

*Pure Country Weavers, Inc. v. Bristar, Inc.,*
   410 F.Supp.2d 439 (W.D.N.C. 2006)....................................................... 13

*Sanders v. Apple, Inc.,*
   2009 WL 150950 (N.D. Cal. Jan. 21, 2009) ............................................ 19

*Schnall v. The Hertz Corp.,*
   78 Cal.App.4th 1144 (Cal. Ct. App. 2000) .............................................. 18

*Williams v. Gerber Prods. Co.,*
   552 F.3d 934 (9th Cir. 2008) ................................................................... 18

**STATUTES**

15 U.S.C. § 2308.................................................................................................. 14

Cal. Bus. & Prof. Code § 17200 ......................................................................... 17

Cal Civ. Code § 1670.5 ....................................................................................... 16

Cal. Comm. Code § 1201 .................................................................................... 16

Cal. Comm. Code § 2314.......................................................................... 7, 16, 19

CALDWELL
LESLIE &
PROCTOR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CALDWELL
LESLIE &
PROCTOR

## **PRELIMINARY STATEMENT**

When a consumer buys a computer from Defendant Apple, Inc. ("Apple"), the consumer reasonably expects to receive a high quality product in exchange for the significant financial consideration provided to Apple; here, over $1,200 for a PowerBook G4 laptop computer.  In exchange for their money, consumers expect their computers to function properly throughout the computer's five-year useful life.

Unfortunately for consumers like Plaintiffs herein, however, the PowerBook G4 computer was sold with a latent defect.  This latent defect – a defective memory slot that significantly degrades the laptop's performance – was not and could not have been known to consumers at the time of purchase.  Although Apple acknowledges the defect in the PowerBook G4 memory slots, it has left the vast majority of consumers to fend for themselves and spend hundreds of dollars to correct the defect.

In turning its back on its loyal customer base, Apple claims that the implied warranty of merchantability's duration is limited to one-year by its express warranty and California statute.  Fortunately for consumers, however, Apple's argument – which is based entirely on caselaw concerning express warranties – ignores more than fifty years of California precedent and well-founded tenets of public policy designed to protect purchasers of products with latent defects.

Indeed, within the last month, the California Court of Appeals rejected the very arguments made by Apple in *Mexia v. Rinker Boat Co.*, _____ Cal. Rptr. 3d ___, 2009 WL 1651442 (June 15, 2009).  The *Mexia* court reiterated longstanding California precedent in concluding that "undisclosed latent defects . . . are the very evil that the implied warranty of merchantability was designed to remedy."  *Id.* at *4.  The *Mexia* decision leaves no room for doubt that implied warranties extend to latent defects discovered after the expiration of an express warranty.  Any attempt by Apple to claim otherwise is squarely foreclosed by the *Mexia* decision.

-1-

Apple's sales of a defective product also run afoul of the Unfair Competition Law, which prohibits fraudulent, unfair and unlawful business practices.  Indeed, Apple knew of the defect, yet continued to sell an inferior product at full price.  Moreover, through its sales of defective and inferior products, Apple also has been unjustly enriched.  Accordingly, Apple's motion to dismiss should be denied and this case should be allowed to proceed to trial to provide consumers with the much needed relief that Apple has refused to provide them.

## ISSUES TO BE DECIDED

1.     Whether Apple can shield itself from liability for breaches of *implied* warranties when it has acknowledged a latent defect in the memory slots of its laptop computers that existed at the time of manufacture and manifests itself after the expiration of Apple's *express* warranty.

2.     Whether the Court should consider, on a motion to dismiss, the terms of a warranty that are not pleaded in the First Amended Complaint ("FAC") when the parties dispute the applicability of the warranty's supposed terms and the validity of the warranty itself is a question of fact.

3.     Whether the FAC adequately alleges that Apple's manufacture and sale of a product it knew to be defective constituted an unfair or unlawful business practice under California's Unfair Competition Law ("UCL").

4.     Whether the FAC's allegations that Apple received and retained substantial profits from sales of a product that Apple knew to be defective state a claim for unjust enrichment.

## FACTUAL BACKGROUND

### A.     *Apple Manufactures and Sells Defective PowerBook G4s*

Defendant Apple is a publicly traded company engaged in the business of designing, manufacturing, marketing, distributing and selling personal computers and related products and services through its own retail stores, online, direct sales, third-party wholesalers and resellers.  FAC ¶16.  In or about January 2001, Apple

began designing, manufacturing, warranting, advertising, marketing, selling and providing PowerBook G4 laptop computer to consumers throughout the United States. *Id.* ¶17.  Between 2001 and 2003, Apple produced the Titanium PowerBook G4; between 2003 and 2006, the Aluminum models were produced. *Id.*

When the Aluminum PowerBook G4s were released in January 2003, Apple marketed them as being designed to exacting standards and touted their many features, including the fact that each Aluminum PowerBook G4 has two memory slots.  The memory slots are an essential feature of the computer, and are marketed so as to give consumers the ability to expand the PowerBook's memory (RAM) at any time, thereby increasing the computer's functionality.  *Id.* ¶18.

Based on Apple's own admissions, however, certain of its PowerBook G4 computers were manufactured with defective memory slots.  Indeed, usually the lower – but sometimes the upper – memory slot does not work; it does not recognize the additional memory added and is thus useless.  As Apple has admitted in an article posted on its website, affected PowerBook G4 computers exhibit at least one of the following symptoms upon installation of RAM memory in the memory slot: (1) the computer does not start up; or (2) the computer does not recognize that the memory slot is filled, thus degrading system performance because the memory in only one slot is recognized.  Apple has also admitted that these symptoms may only occur intermittently, and that an owner of a PowerBook with a defective memory slot may not know or become aware of the defect until months, or years, after installation of memory in the defective memory slot.  *Id.* ¶22.

Tens of thousands of people nationwide have purchased PowerBook computers with defective memory slots.  Aside from the limited number of

consumers covered by an extended warranty,[1]  Apple has informed Plaintiffs and other customers with defective PowerBooks that they have no recourse other than to repair the defective memory slots at their own expense.  Apple has refused to warrant, repair or pay for any repairs relating to the PowerBook's defective memory slots, or to warrant any PowerBooks should the defect manifest itself sometime in the future. *Id.* ¶28.

## B. Plaintiffs Each Purchased a Defective Computer that Apple Refuses to Fix

### 1. Reuben Berenblatt

On or about July 12, 2005, Mr. Berenblat purchased directly from Apple an Aluminum PowerBook G4 15", serial number W85252RYRG4.  In September 2008, Mr. Berenblat realized that his computer was not working well.  Thinking that additional memory might be required to optimize the performance of his computer, Mr. Berenblat added memory to his computer.  However, his computer's performance only worsened.  Mr. Berenblat brought his computer to an Apple store in New York City and was told that his hard drive was defective.  However, it was later determined that there was no problem with the hard drive; rather, the lower memory slot was defective and degraded his computer's performance.  Mr.

---

[1] After receiving thousands of complaints regarding defective memory slots, Apple extended the warranty available to PowerBook G4 customers by initiating, in or around 2006, the PowerBook G4 Memory Slot Repair Extension Program covering a limited number of PowerBook G4 models experiencing specific component issues and that were manufactured between January, 2005 and April, 2005 ("Extended Warranty"). Thus, the vast majority of PowerBooks were not covered by the Extended Warranty. Apple also did not give adequate notice of its Extended Warranty to its customers. Apple did not contact purchasers of PowerBook computers to inform them that they may be covered by the Extended Warranty, nor did Apple notify all PowerBook owners of the defective memory slot so that consumers could have their PowerBooks repaired during the one year warranty in effect from the date of purchase.

CALDWELL
LESLIE &
PROCTOR

Berenblat again contacted Apple directly to have his computer repaired, and Apple refused to repair or replace his defective computer.  FAC ¶¶31-34.

### 2.  Andrew Personette

In 2005, Mr. Personette purchased a titanium PowerBook computer with an AppleCare Protection Plan.  However, Mr. Personette's titanium PowerBook was defective.  After returning his titanium computer to the Apple store in New York City's Soho neighborhood several times for repair, Apple personnel determined that the titanium PowerBook could not be fixed.  Accordingly, in exchange for his defective titanium PowerBook, in 2005, Mr. Personette received from the Apple store an Aluminum PowerBook G4 15", serial number W84080FANRW.  In 2007, Mr. Personette added memory to his PowerBook to increase its functionality.  However, shortly thereafter, in September 2007, Mr. Personette noticed that his PowerBook was functioning very slowly and determined that the computer did not recognize one of the memory cards because the lower memory slot was defective.  Mr. Personette contacted Apple directly to have his computer repaired, and Apple refused to repair or replace his defective computer.  FAC ¶¶35-38.

### 3.  Earl "Duke" Simpson

On or about August 20, 2005, Dr. Simpson purchased an Aluminum PowerBook G4 15", serial number W852545TRG4 from MacShop Northwest, an Apple-authorized reseller and service provider.  Dr. Simpson sought to increase the RAM in his PowerBook to the maximum of 2 GB.  However, on or about October 12, 2008, when Dr. Simpson attempted to add memory to his PowerBook, he realized that the lower memory slot was defective and did not recognize the memory.  Dr. Simpson was advised by Apple-authorized reseller and service provider, The Portland Mac Store, to increase the RAM in the upper memory slot to the maximum in the single memory slot of 1 GB.  Thus, Dr. Simpson was not able to obtain the maximum amount of memory that his computer should have been able to utilize had it not been defective.  FAC ¶¶39-42.

CALDWELL
LESLIE &
PROCTOR

-5-

### 4. Laura Miller

In or around early 2006, Ms. Miller purchased an Aluminum PowerBook G4 15", serial number W8527057RG3 from a third-party internet vendor. Shortly after purchasing her PowerBook, Ms. Miller experienced problems and returned the computer to Apple. In June 2006, Apple replaced the motherboard of her PowerBook. Because of her initial problems, Ms. Miller purchased an AppleCare Protection Program to cover her PowerBook computer. Just after expiration of her AppleCare extended protection, Ms. Miller's computer again failed. At this time, Ms. Miller learned that the lower memory slot of her PowerBook G4 was defective and did not recognize the memory that she attempted to load into the computer. Thus, Ms. Miller was not able to obtain the maximum amount of memory that her computer should have been able to utilize had it not been defective. FAC ¶¶43-47.

As a result of the inherent defect existing in each of their computers, Plaintiffs cannot use their PowerBooks as intended, and have suffered damage. Plaintiffs each purchased a computer which he or she now cannot use for its intended purpose because of the defective memory slot; Plaintiffs' PowerBooks – memory of which has been reduced by half – are not fully functional. And the expense of repairing the memory slot – upwards of $500 – would constitute almost half the original purchase price of the computer.

### C. *Apple Continued to Sell PowerBooks with Knowledge of the Defect*

Apple continued to manufacture and sell PowerBook computers with defective memory slots even after receiving thousands of complaints informing it of the defective memory slots. Thus, Apple profited enormously from sales of its PowerBook G4 computers while Plaintiffs and the proposed Class incurred significant damages, including but not limited to the expenses incurred in repairing or replacing their defective PowerBook computers. FAC ¶50.

Apple has, and continues to this day, refused to respond to the thousands of customer complaints regarding the PowerBook's defective memory slot, and has

1  refused to repair at its own expense the defective memory slot or compensate

2  thousands of PowerBook purchasers who repaired the defective memory slot at

3  their own expense.  *Id.* ¶51.

## ARGUMENT

### I.     THE APPLICABLE STANDARD FOR A MOTION TO DISMISS

6      "To survive a motion to dismiss for failure to state a claim, the plaintiff must

7  allege 'enough facts to state a claim to relief that is plausible on its face.'"  *Lazy Y*

8  *Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (quoting *Bell Atlantic*

9  *Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007)); *accord Ashcroft v.*

10  *Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "In general, the inquiry is limited to the

11  allegations in the complaint, which are accepted as true and construed in the light

12  most favorable to the plaintiff."  *Id.*  "[A] district court ruling on a motion to

13  dismiss is not sitting as a trier of fact."  *Gilead Sciences Sec. Litig.*, 536 F.3d 1049,

14  1057 (9th Cir. 2008).  "[S]o long as the plaintiff alleges facts to support a theory

15  that is not facially implausible," the motion to dismiss must be denied.  *Id.*  Indeed,

16  the "court is bound to give plaintiff the benefit of every reasonable inference to be

17  drawn from the 'well-pleaded' allegations of the complaint."  *Cartwright v. Viking*

18  *Indus., Inc.*, 249 F.R.D. 351, 353 (E.D. Cal. 2008).

### II.    THE COMPLAINT STATES A CLAIM FOR BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

21      California has adopted the Uniform Commercial Code, which provides a

22  myriad of rights to the purchasers of consumer products.  Pursuant to California

23  Commercial Code § 2314, implied in every contract for sale is a warranty of

24  merchantability.  Cal. Comm. Code § 2314(1).  For goods to be merchantable, they

25  must be "fit for the ordinary purpose for which such goods are used."  *Id.*

26  §2314(2)(c); *see also Brittalia Ventures v. Stuke Nursery Co., Inc.*, 153

27  Cal.App.4th 17, 27, 62 Cal.Rptr.3d 467, 475 (Cal. Ct. App. 2007).  Indeed, the

28  implied warranty of merchantability imposes liability "if the goods contain an

CALDWELL
LESLIE &
PROCTOR

impurity of such a nature as to render them unusable, and therefore unsalable, for the general uses and purposes of goods of the kind described." *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682, 694, 268 P.2d 1041, 1048 (1954).

For more than fifty years, California courts have held that the warranty of merchantability applies "where the defect is a *latent* defect." *Moore v. Hubbard & Johnson Lumber Co.*, 149 Cal.App.2d 236, 240, 308 P.2d 794, 797 (Cal. Ct. App. 1957) (emphasis in original). As the appellate court in *Moore* explained: "The mere fact that the defect was latent or hidden does not excuse the seller. Quite the contrary." *Id.* at 241, 308 P.2d at 797. Indeed, the implied warranty of merchantability "extends . . . to latent defects upon the seller whether they are known to him or not." *Lindberg v. Coutches*, 167 Cal.App.2d Supp. 828, 834, 334 P.2d 701, 705 (Cal. Ct. App. 1959). These black-letter principles have been consistently reiterated and reaffirmed by California appellate courts. *See, e.g., Mexia v. Rinker Boat Co., Inc.*, __ Cal.Rptr.3d ___, 2009 WL 1651442, at * 4 (Cal Ct. App. June 15, 2009); *Brittalia Ventures*, 153 Cal.App.4th at 24, 62 Cal.Rptr.3d at 473 ("Implied warranties extend to latent defects."); *Garlock Technologies, LLC v. Nak Sealing Technologies Corp.*, 148 Cal.App.4th 937, 950, 56 Cal.Rptr.3d 177,188 (Cal. Ct. App. 2007) (affirming judgment for breach of the warranty of merchantability on the basis of latent defects).

Here, Plaintiffs each purchased a laptop computer with a latent defect that existed at the time of manufacture. The implied warranty of merchantability protects purchasers of defective products and provides them with recourse against Apple.

CALDWELL
LESLIE &
PROCTOR

-8-

**A.     California Courts Have Rejected Apple's Argument Limiting the Duration of Implied Warranties**

Apple argues that the Song-Beverly Consumer Warranty Act[2] (the "Song-Beverly Act") and its express warranty limit the application of implied warranties to defects that manifest themselves within one year of the date of purchase. However, consistent with a half-century of California precedent, the California Court of Appeals recently considered and rejected this same argument in *Mexia v. Rinker Boat Company, Inc.*, concluding that the reasoning offered by Apple was "unsupported by the text of the [Song-Beverly] statute, legal authority, or sound policy." 2009 WL 1651442, at *8.

In *Mexia*, the plaintiff commenced an action under the Song-Beverly Act asserting that he purchased a boat from the defendants that was unmerchantable due to a latent defect that manifested itself two years after the sale of the boat. *Id.* at *1, 6. The defendants demurred, arguing that "the [one-year] duration provision of the Song-Beverly Act should be interpreted as barring an action for breach of the implied warranty of merchantability when the purchaser fails to discover and report the defect to the seller within the time period specified in that provision." *Id.* at *1. The defendants also contended that the plaintiff's claims were precluded because the defendants' "limited warranty expressly limits 'the duration of any implied warranties of merchantability . . . to the [one-year] term of this limited warranty' and 'disclaims any implied warranties of merchantability . . . after expiration of this limited warranty.'" *Id.* Responding to the defendants' arguments, the Court of Appeal stated:

_____

[2] The Song-Beverly Act was enacted by the California Legislature in 1970 and regulates certain warranty terms. The Act "supplements, rather than supercedes the provisions of the California Uniform Commercial Code." *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal.App.3d 205, 213, 285 Cal.Rptr. 717, 722 (Cal. Ct. App. 1991).

CALDWELL
LESLIE &
PROCTOR

We reject this argument because the plain language of the statute, particularly in light of the consumer protection policies supporting the Song-Beverly Act, make clear that the statute merely creates a limited, prospective duration for the implied warranty of merchantability; ***it does not create a deadline for discovering latent defects*** or for giving notice to the seller.

*Id.* at *1 (emphasis added).  The *Mexia* court further explained:

The implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale.  Indeed, ***undisclosed latent defects . . . are the very evil that the implied warranty of merchantability was designed to remedy***.  In the case of a latent defect, a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect, not by its subsequent discovery.

*Id.* at *4 (internal citations omitted) (ellipsis in original) (emphasis added). "Thus, although a defect may not be discovered for months or years after a sale, merchantability is evaluated as if the defect were known."  *Id.*  Accordingly, the court resoundingly rejected the defendants' argument that a latent defect must be discovered within one year of purchase in order to state a claim for breach of the implied warranty of merchantability.  *Id.* at *8.

The *Mexia* court's rationale is consistent with California precedent.  In another recent case, *Brittalia Ventures v. Stuke Nursery Co.*, 153 Cal.App.4th 17, 28, 62 Cal.Rptr.3d 467, 476 (Cal. Ct. App. 2007), the California Court of Appeal similarly held that the implied warranty of merchantability provided a remedy to the purchaser of trees with a latent defect that manifested itself more than two years after the purchase. Reiterating the well-settled principle that "[i]mplied warranties extend to latent defects," the *Brittalia Ventures* court affirmed a jury verdict awarding the plaintiff damages for breach of the implied warranty of merchantability.  *Id.* at 24, 62 Cal. Rptr.3d at 473.

CALDWELL
LESLIE &
PROCTOR

-10-

Similarly, in *Hicks v. Kaufman and Broad Home Corp.*, 89 Cal.App.4th 908 (Cal. Ct. App. 2001), the California Court of Appeal explained:

> [P]roof of breach of warranty does not require proof the product has malfunctioned but only that it contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product. The question of whether an inherently defective product is presently functioning as warranted goes to the remedy for the breach, not proof of the breach itself.

*Id.* at 918; see also *Hewlett-Packard Co. v. Superior Court*, 167 Cal.App.4th 87, 96 (Cal. App. Ct. 2008). In *Hewlett-Packard*, the court confronted claims concerning the failure of a laptop computer and held that "an actual malfunction of the notebook screens would not be necessary to establish a defect, if it could be established that the notebook screens were substantially certain to fail prematurely." *Id.*

In moving to dismiss the FAC, Apple relies almost exclusively on an intermediate appellate court decision, *Daugherty v. American Honda Motors Co., Inc.*, 144 Cal.App.4th 824, 830 (Cal. Ct. App. 2006), which holds that failure of a component part outside the express warranty period cannot form the basis of an *express* warranty claim. However, the rationale of Daugherty applies only to *express* warranty claims. Indeed, the *Daugherty* court emphasized that "Daugherty makes no implied warranty claims." *Id.* at 831. Thus, the *Daugherty* court distinguished *Alberti v. General Motors Corp.*, 600 F.Supp. 1026, 1028 (D.D.C. 1985), a case which held that allegations of latent defects existing at the time of sale were sufficient to state a case of action for breach of warranty, on the basis that the *Alberti* decision "confused concepts of express and implied warranty." *Id.* Accordingly, the *Daugherty* decision is inapplicable to this case in which Plaintiffs allege breach of an *implied* warranty.[3]

---

[3] Apple's only citation to a case involving implied warranties is *Atkinson v. Elk*

CALDWELL
LESLIE &
PROCTOR

Apple's reliance on *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) is similarly misplaced.  In *Clemens*, the Ninth Circuit dismissed express warranty claims because they arose outside the expiration of the warranty period. *Id.* at 1023 (citing *Daugherty*, 144 Cal. App. 4th at 830).  Although the *Clemens* court dismissed the implied warranty claims, the court stated that the implied warranty claim "also fails, but for a different reason" — a lack of privity.  *Id.* Thus, the *Clemens* court's reasoning with respect to express warranties cannot be extended to implied warranties.[4]

Here, Plaintiffs allege that they purchased laptop computers with a latent defect that rendered the computers substantially certain to malfunction during the computer's useful life.  FAC ¶20.  The defective memory slots existed at the time of manufacture.  FAC ¶24.  Accordingly, under the governing precedent applicable to implied warranties, Plaintiffs have stated a claim for breach of the implied warranty of merchantability.

**B.    *Apple's Reliance on Its Supposed Express Warranty Is Misplaced***

Apple's argument that the duration of its implied warranty is limited based on the terms of an express warranty (that is not alleged in the FAC) and caselaw addressing express warranties is sorely misplaced.  As set forth above, Apple

*Corporation of Texas*, 142 Cal. App.4th 212, 48 Cal.Rptr. 247 (Cal. Ct. App. 2006).  In *Atkinson*, the court dismissed the implied warranty claim because it was not filed within the applicable statute of limitations.  *Id.* at 232, 48 Cal.Rptr. at 259.

[4] Apple's citation to *Long v. Hewlett-Packard Co.*, 2007 WL 2994812 (N.D. Cal. July 27, 2007), *aff'd*, 316 Fed.Appx. 585 (9th Cir. 2009), has no relevance to the implied warranty claims asserted here because that case involved express warranty claims only.  Apple's reliance on *Oestricher v. Alienware Corp.*, 544 F.Supp. 964 (N.D. Cal. 2008) is similarly puzzling because there are no warranty claims whatsoever asserted in that case.  Accordingly, the *Oestricher* decision has no bearing on the present motion.  Apple's reliance on *Hoey v. Sony Electronics*, 515 F.Supp.2d 1099 (N.D. Cal. 2007), is also misplaced as that case simply dismissed a claim without prejudice for a pleading defect.

ignores the ample precedent concerning implied warranties which require rejection of Apple's argument concerning the duration of the implied warranty at issue here. Apple's arguments also fail for several additional reasons.

### 1. The Court Should Not Consider the Terms of Apple's Purported Express Warranty on a Motion to Dismiss

Apple contends that the terms of its express warranty disclaim the application of implied warranties beyond the period of its express warranty. However, no claim for breach of express warranty is alleged and the terms of the express warranty are not asserted in the FAC. It is black-letter law that when a document is not alleged in the complaint and its authenticity is disputed, the Court should not consider it on a motion to dismiss. *Cooper v. Pickett*, 137 F.3d 616, 622-23 (9th Cir. 1997) (on a motion to dismiss, courts should not consider documents outside the pleading and cannot take judicial notice of documents the authenticity of which is disputed); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (same); *Cole v. Asurion Corp.*, No. CV 06-6649, 2008 WL 5423859, at *3, 7 (C.D. Cal. Dec. 30, 2008) (same); *Pure Country Weavers, Inc. v. Bristar, Inc.*, 410 F.Supp.2d 439, 446 (W.D.N.C. 2006) (refusing to consider warranty terms).

Moreover, the total lack of information concerning the purported express warranty upon which Apple relies confirms the impropriety of considering the document on a motion to dismiss. Apple has not asserted that the express warranty was presented to Plaintiffs. Nor has Apple stated how, if at all, the supposed warranty was provided to consumers. And, assuming it was provided to consumers, it is not clear when the supposed warranty was provided to consumers or whether that warranty is the one provided to all PowerBook purchasers within the proposed class period.

The multitude of unexplained facts concerning the purported express warranty underscores the need for discovery to determine whether the supposed

1   warranty is applicable to Plaintiffs' claims at all.  For example, in *Blennis v.*

2   *Hewlett-Packard Co.*, 2008 WL 818526, at *2-3 (N.D.Cal. Mar. 25, 2008), this

3   Court refused to consider the terms of an express warranty that was not alleged in

4   the complaint.  Similarly, in *Cartwright v. Viking Industries, Inc.*, 249 F.R.D. 351,

5   356 (E.D. Cal. 2008), the court denied a motion to dismiss because "[u]ntil a

6   specific warranty is factually established as pertaining to this action, the court

7   cannot dismiss all implied warranty claims as a matter of law."

8           **2.      The Validity of the Supposed Disclaimer of Implied**

9                   **Warranties Raises Factual Questions that Cannot Be**

10                  **Resolved at the Pleading Stage**

11          Even if the Court were to consider the supposed warranty on a motion to

12  dismiss (which it should not), the validity of the limitations on implied warranties

13  raises questions of fact that cannot be resolved at this stage of the litigation. *See,*

14  *e.g., Hughes Tool Co. v. Max Hinrichs Seed Co.*, 112 Cal.App.3d 194, 202 (Cal.

15  Ct. App. 1980) (exclusion of implied warranties is a question of fact).

16          To be effective, any limitation on implied warranties must be made available

17  to consumers prior to the sale of the product.  15 U.S.C. § 2308(c).  Indeed, "[a]

18  disclaimer of warranties must be specifically bargained for so that a disclaimer in a

19  warranty given to the buyer *after* he signs the contract is *not* binding."  *Dorfman v.*

20  *International Harvester Co.*, 46 Cal.App.3d 11, 20 120 Cal.Rptr. 516, 522 (Cal. Ct.

21  App. 1975) (emphasis in original).  As the California Supreme Court explained in

22  *Hauter v. Zogarts*, 14 Cal.3d 104, 534 P.2d 377, 120 Cal. Rptr. 681 (1975):

23                  [A]ny disclaimer or modification [of implied warranties]
24                  must be strictly construed against the seller.  Although
                    the parties are free to write their own contract, the
25                  consumer must be placed on fair notice of any disclaimer
                    or modification of a warranty and must freely agree to the
26                  seller's terms.  A unilateral nonwarranty cannot be tacked
27                  onto a contract containing a warranty.

28

CALDWELL
LESLIE &
PROCTOR

-14-

*See also Bowdoin v. Showell Growers, Inc.*, 817 F.2d 1543, 1545 (11th Cir. 1987) ("[i]f... the disclaimer was not presented to the purchaser before the sale, the court will hold such a disclosure did not form a part of the basis of the bargain"); *LWT, Inc. v. Childers*, 19 F.3d 539, 541 (10th Cir. 1994) (holding that effectiveness of a limited warranty "is ordinarily [an issue] of fact for the jury"). Here, there is no information in the pleadings regarding when the supposed warranty was provided to consumers and thus the Plaintiffs should be permitted to conduct discovery concerning the validity of any disclaimers contained in the express warranty.

Even if a limit on the duration of an implied warranty is allowed, that limit must be "conscionable." 15 U.S.C. § 2308(b). For example, in *Carlson v. General Motors Corporation*, 883 F.2d 287, 293 (4th Cir. 1989), the plaintiffs experienced problems with their vehicles after the expiration of the express warranties. Reversing the district court's holding on a motion to dismiss that the limits on implied warranties were coextensive with the express warranties, the court explained:

> We . . . hold that the district court erred by ruling, solely on the basis of the pleadings, that GM's durational limitations on any and all implied warranties were both 'reasonable' and 'conscionable' as a matter of law. The court will be equipped to address that question only *after* plaintiffs have had an opportunity – whether in connection with a motion for summary judgment or at trial – to present evidence that, for example, they had no 'meaningful choice' but to accept the limited warranties, or that the durational limitations 'unreasonably' favored the defendant.

*Id.* (emphasis in original); *see also Payne v. Fujifilm U.S.A, Inc.*, Civ. A. No. 07-385, 2007 WL 4591281, at *5 (D.N.J. Dec. 28, 2007) (denying motion to dismiss because complaint sufficiently alleged that the durational limits on warranties were unconscionable); *Lennar Homes, Inc. v. Masonite Corp.*, 32

F.Supp.2d 396, 401 (E.D.La. 1998) ("shipping a product with a known latent defect may infect a limitation with unconscionability"). California law similarly provides that "[w]hen it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination." Cal Civ. Code § 1670.5.

Moreover, if Apple's warranty limitations were made in bad faith, they are invalid. With respect to implied warranties, the comments to the Uniform Commercial Code (as adopted by California) provide: "[A seller's] knowledge of any defects not apparent on inspection would, however, without need for express agreement and in keeping with the underlying reason of the present section and the provisions on good faith, *impose an obligation that known material but hidden defects be fully disclosed*." Cal. Comm. Code § 2314, UCC Comment 3 (emphasis added).[5]

Here, the FAC alleges that Apple was aware that its PowerBooks were defective, yet continued to sell them regardless. FAC ¶¶50, 69. Thus, Apple was in a position to know what consumers did not; that the product was likely to fail during its useful life. Despite Apple's knowledge of the defect in the memory slots, it did not adequately advise consumers of the defect and obtain their consent to the purchase of a defective product. FAC ¶52. Consumers had no opportunity to bargain with Apple over the terms of their PowerBook purchase. FAC ¶25. These allegations are sufficient to plead that any durational limit on implied warranties is unconscionable and violates basic principles of good faith. FAC ¶69. Accordingly, Plaintiffs are entitled to discovery concerning whether any purported

---

[5] Pursuant to the Commercial Code, "good faith" means "honesty in fact and the observance of reasonable commercial standards of fair dealing." Cal. Comm. Code § 1201(b)(20).

1   limitation on the duration of implied warranties is unconscionable or made in bad

2   faith and, therefore, void.

3   **III.   THE COMPLAINT STATES A CLAIM UNDER CALIFORNIA'S**

4   **UNFAIR COMPETITION LAW**

5          California's Unfair Competition Law ("UCL") prohibits "any unlawful,

6   unfair or fraudulent business act or practice. . . ."  Cal. Bus. & Prof. Code § 17200.

7   "The scope of the UCL is quite broad."  *McKell v. Washington Mut., Inc.*, 142 Cal.

8   App.4th 1457, 1471 (Cal. Ct. App. 2006); *see also Kasky v. Nike, Inc.*, 27 Cal.4th

9   939, 949 (2002) ("The UCL's scope is broad").  "Because Business and

10  Professions Code section 17200 is written in the disjunctive, it establishes three

11  varieties of unfair competition – acts or practice that are unlawful, or unfair, or

12  fraudulent."  *AICCO, Inc. v. Ins. Co. of N. Am.*, 90 Cal.App.4th 579, 587 (Cal. Ct.

13  App. 2001).

14         *A.     Apple's Manufacture and Sale of Defective PowerBooks*

15                *Constitutes an Unfair Business Practice in Violation of the UCL*

16         "A business practice is unfair within the meaning of the UCL if it violates

17  established public policy or if it is immoral, unethical, oppressive or unscrupulous

18  and causes injury to consumers which outweighs its benefits."  *McKell*, 142

19  Cal.App.4th at 1473.[6]   As the California Supreme Court has explained, "[b]y

20  defining unfair competition to include also any '*unfair or fraudulent* business act

21  or practice,' the UCL sweeps within its scope acts and practices not specifically

22  proscribed by any other law."  *Kasky*, 27 Cal.4th at 950 (quoting Bus. & Prof.

23  Code § 17200) (emphasis in original); see also *Lozano v. AT&T Wireless Serv.,*

24  *Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) ("Each prong of the UCL is a separate and

25

26  _____

27  [6] In *Lozano v. AT&T Wireless Serv., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007), the
    Ninth Circuit "endorse[d]" the application of the balancing test employed by the

28  *McKell* court.

CALDWELL
LESLIE &
PROCTOR

distinct theory of liability; thus, the 'unfair' practices prong offers an independent basis for relief.").

The California courts have made clear that "the determination of whether [a business act or practice] is unfair is one of fact which requires a review of the evidence from both parties. . . .  It thus cannot usually be made on demurrer." *McKell*, 142 Cal.App.4th at 1473.  Indeed, "'unfairness' is an equitable concept that cannot be mechanistically determined under the relatively rigid legal rules applicable to the sustaining or overruling of a demurrer." *Schnall v. The Hertz Corp.*, 78 Cal.App.4th 1144, 1167 (Cal. Ct. App. 2000).  In reversing a district court decision granting a motion to dismiss a UCL claim, the Ninth Circuit recently stated that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008).

Here, the FAC alleges that Apple marketed the laptops by "tout[ing] their many features, including the fact that each Aluminum PowerBook G4 has two memory slots."  FAC ¶18.  Apple has since admitted that many PowerBook G4s have defective memory slots, yet has refused to correct the defect for the vast majority of PowerBook owners.  FAC ¶¶19-20, 23.  Indeed, Apple continued to sell the product after it became aware of the defect.  FAC ¶50.  Apple thus reaped substantial profits from sales of defective PowerBook computers at the expense of consumers who were shortchanged by paying significant sums for a defective product.  Accordingly, Apple engaged in an unfair business practice and was unjustly enriched.  See *Lectrodryer v. Seoulbank*, 77 Cal.App.4th 723, 726 (Cal. Ct. App. 2000); *see also AICCO*, 90 Cal.App.4th at 588, 109 Cal.Rptr. at 366 ("In general, the unfairness prong has been used to enjoin deceptive or sharp business practices.").  These allegations state a claim under the UCL arising from an unfair business practice.

CALDWELL
LESLIE &
PROCTOR

**B.      Apple's Knowing Sale of a Defective Product Is Unlawful**

Although the finding of an unfair business practice is sufficient to sustain Plaintiffs' UCL claims, Apple's actions in selling a defective product are also unlawful.  With respect to the unlawful prong of the UCL, courts have recognized that "[t]he UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law."  *Plascencia v. Lending 1st Mortgage*, 583 F.Supp.2d 1090, 1098 (N.D.Cal. 2008).  "Violation of almost any federal, state or local law may serve as the basis for a UCL claim."  *Id.*; *see also AICCO*, 90 Cal.App.4th at 587.   Here, the FAC asserts that Apple violated California Commercial Code § 2314 and was unjustly enriched by selling computers with defective memory slots.  FAC ¶41.  These predicate violations are sufficient to state a claim under the UCL.  *See Chamberlain v. Ford Motor Co.*, 369 F.Supp.2d 1138, 1147 (N.D. Cal. 2005).

Finally, even accepting Apple's argument concerning the duration of implied warranties (which the Court should not), the passage of time limitations under a predicate statute does not bar a claim under the UCL.  *See*, *e.g.*, *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal.4th 163, 179 (Cal. 2000).

## IV.      THE COMPLAINT ALLEGES A CAUSE OF ACTION FOR UNJUST ENRICHMENT

State and federal courts throughout California, including this Court, have recognized a cause of action for unjust enrichment.  *See*, *e.g.*, *Blennis*, 2008 WL 818526, at *4 ("Plaintiffs are entitled to plead an unjust enrichment claim in the alternative.") (Fogel, J.); *Sanders v. Apple, Inc.*, 2009 WL 150950 (N.D. Cal. Jan. 21, 2009) (Fogel, J.); *Fed. Deposit Ins. Co. v. Dintino*, 167 Cal.App.4th 333, 346, 84 Cal.Rptr.3d 38, 49 (Cal. App. Ct. 2008).

To recover for unjust enrichment, a complaint must allege "receipt of a benefit and unjust retention of the benefit at the expense of another."  *Lectrodryer v. Seoulbank*, 77 Cal.App.4th 723, 726 (Cal. Ct. App. 2000); *see also Ghirardo v.*

*Antonioli*, 14 Cal.4th 39, 51 (1996); *Hirsch v. Bank of America, N.A.*, 107 Cal.App.4th 708, 722 (Cal. Ct. App. 2003).  A claim for unjust enrichment is synonymous with restitution.  *First Nationwide Savings v. Perry*, 11 Cal.App.4th 1657, 1662 (Cal. Ct. App. 1992).  Whether or not a plaintiff is entitled to recover on a theory of unjust enrichment requires a determination of policy considerations and the knowledge of the alleged wrongdoer.  *Id.*

Plaintiffs allege that Apple manufactured computers with defective memory slots.  FAC ¶19.  Despite its awareness of this defect, Apple refused to correct it for the vast majority of consumers.  FAC ¶¶20-23.  Plaintiffs and other members of the proposed Class expended substantial sums for a computer that Apple touted as having features such as two memory slots.  FAC ¶¶18, 50.  Indeed, to correct the defect on their own, consumers would have to pay almost one-half of the purchase price of the computer.  FAC ¶1.  Under these circumstances, it would be unjust for Apple to retain the enormous profits it received based on sales of computers that do not operate as intended.  Thus, Plaintiffs have stated a cause of action for unjust enrichment.

CALDWELL
LESLIE &
PROCTOR

1

## <u>CONCLUSION</u>

2          For the foregoing reasons, the Court should deny Apple's motion to dismiss

3     in its entirety and should grant such other and further relief as it deems just and

4     proper.

5
      DATED:  July 10, 2009                    Respectfully submitted,
6
                                               CALDWELL LESLIE & PROCTOR, PC
7                                              ROBYN C. CROWTHER
                                               ERIC S. PETTIT
8

9
                                               By _____/s/_____
10                                                   ROBYN C. CROWTHER
                                               Attorneys for Plaintiffs
11
                                               MEISELMAN, DENLEA, PACKMAN,
12                                             CARTON & EBERZ P.C.
                                               Jeffrey I. Carton (*pro hac vice*)
13                                             Jerome Noll (*pro hac vice*)
                                               Christine M. Ford (*pro hac vice*)
14
                                               Attorneys for Plaintiffs
15

16

17

18

19

20

21

22

23

24

25

26

27

28

CALDWELL
LESLIE &
PROCTOR

-21-