**E-Filed 8/21/2009**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| RUEBEN BERENBLAT, ANDREW PERSONETTE, EARL. C. SIMPSON, and LAURA MILLER,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE, INC.,<br><br>Defendant. | Case Number 08-4969 JF (PVT)<br>Case Number 09-1649 JF (PVT)<br><br>ORDER[1] GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND<br><br>[re: docket nos. 38; 21] |
| DEBORAH VAIL,<br><br>Plaintiff,<br><br>v.<br><br>APPLE, INC.,<br><br>Defendant. | |

Plaintiffs Reuben Berenblat, Andrew Personette, Earl C. Simpson, and Laura Miller (collectively the "Berenblat Plaintiffs") and Deborah Vail ("Vail") bring these putative class

[1] This disposition is not designated for publication in the official reports.



Dockets.Justia.com

actions[2] on behalf of all persons similarly situated who purchased PowerBook G4 portable computers from Defendant Apple, Inc. ("Apple"). Apple moves to dismiss the complaints for failure to state a claim. For the reasons set forth below, the motions will be granted, with leave to amend.[3]

## I. BACKGROUND

A. Berenblat Plaintiffs

Apple designs, manufactures, and sells personal computers, including the PowerBook G4. Berenblat FAC ¶ 16. The PowerBook G4 computers were sold with a one-year limited express warranty, which limits the duration of any implied warranties to the duration of the express warranty. *Id*. ¶ 24; Klestoff Decl. Ex. A at 2. Plaintiff Berenblat, a New York resident, allegedly purchased a PowerBook G4 on July 12, 2005. Berenblat FAC ¶¶ 10, 31. He alleges that in September 2008, it was discovered that "the lower memory slot was defective and degraded his computer's performance." *Id*. at ¶ 32. Plaintiff Personette, also a New York resident, allegedly purchased a PowerBook G4 in 2005, and two years later he determined that "the computer did not recognize one of the memory cards because the lower memory slot was defective." *Id*. ¶¶ 11, 35-36. Plaintiff Simpson, a Washington resident, allegedly purchased a PowerBook G4 on August 20, 2005. *Id*. ¶¶ 12, 39. He alleges that on October 12, 2008 "he realized that the lower memory slot was defective and did not recognize the memory." *Id*. ¶ 40. Plaintiff Miller, a California resident, allegedly purchased a PowerBook G4 in early 2006. *Id*. at ¶¶ 13, 43. She alleges that she subsequently purchased an AppleCare Protection Program, which is an extended service agreement that provided her with repair coverage for an additional two years beyond the term of the express warranty. *Id*. at ¶ 45; Klestoff Decl. Ex. B. She alleges that "just after expiration of her AppleCare extended protection" and approximately three years after she

---

[2] The instant actions were related by the Court on April 30, 2009.

[3] Apple's Request for Judicial Notice of the terms of the express warranty is granted, as the FAC references the warranty and at least two of the Berenblat Plaintiffs exercised their rights under the express warranty. *See Hoey v. Sony Elecs. Inc*., 515 F. Supp. 2d 1099, 1103 (N.D. Cal. 2007).

purchased her PowerBook G4, she learned that "the lower memory slot of her PowerBook G4 was defective and did not recognize the memory she attempted to load into the computer." Berenblat FAC ¶ 46.

The Berenblat Plaintiffs bring the instant action on behalf of a nationwide class of all original purchasers of PowerBook computers with one or more defective memory slots during the period from January 1, 2005 to the present, *see* Berenblat FAC ¶ 53, and allege three claims for relief: (1) unfair and unlawful business practices in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*.; (2) breach of the implied warranty of merchantability pursuant to Cal. Com. Code §2314; and (3) unjust enrichment.

B. Plaintiff Vail

Plaintiff Vail purchased her PowerBook G4 in August 2004. Vail Compl. ¶¶1, 23. She allegedly had been informed through various Apple publications that the PowerBook's random access memory ("RAM") could be expanded up to 2GB. *Id*. ¶ 24. This apparent capability was a material consideration in her decision to purchase her PowerBook because she anticipated expanding the memory at a future date in the event that her computer's operating speed declined, a condition that may be remedied by adding additional memory. *Id*. ¶ 25. In 2006, Vail attempted to expand the memory, and she purchased and installed the additional memory module in her laptop's extra memory slot. *Id*. ¶¶ 1, 26. However, several months later she discovered that the extra memory slot had not been working. *Id*. Upon investigation, Vail discovered a discussion thread on Apple's website that revealed the existence of numerous complaints with respect to memory slot failure, some dating back to 2005, and that Apple allegedly had deleted earlier posts regarding the memory slot defect. *Id*. ¶¶ 16, 27. Apple also allegedly refused to repair the defective slots free of charge. *Id.* ¶ 21. Vail alleges that had she known that the PowerBook's memory capacity was only 1GB, and that it would not support an additional memory module in the future, she would not have purchased her computer or paid the price she paid. *Id*. ¶¶ 25, 28, 38, 46.

Vail alleges that Apple's actions violated the CLRA and UCL, and brings those claims on behalf of a class defined as follows:

> All persons residing in the United States who purchased a PowerBook G4 computer with an extra memory slot (a memory slot sold unoccupied by a factory-installed memory module); who purchased additional memory and installed it in their extra memory slot; whose PowerBook registers the extra memory slot as "empty" even when memory is installed; and who have not received a free repair of the extra memory slot from Apple.

Vail Compl. ¶ 29.

## II. LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief may be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1997). *See also Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). However, the Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). *See also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive motion to dismiss).

On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)*; N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). However, under the "incorporation by reference" doctrine, the Court also may consider documents which are referenced extensively in the complaint and which are accepted by all parties as authentic. *In re Silicon Graphics, Inc. Sec. Litig*., 183 F.3d 970, 986 (9th Cir.1999). Leave to amend should be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr*., 66 F. 3d 245, 248 (9th Cir. 1995). When amendment would be futile, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

## III. DISCUSSION

### A. Berenblat FAC

#### 1. Breach of Implied Warranty of Merchantability

"Merchantability" requires that a product conform to its ordinary and intended use. *See*,

*e.g.*, *Hauter v. Zogarts*, 14 Cal. 3d 104, 117-18 (1975). Under Cal. Com. Code § 2314(2), products are merchantable if they:

> (a) Pass without objection in the trade under the contract description; and
>
> (b) In the case of fungible goods, are of fair average quality within the description; and
>
> (c) Are fit for the ordinary purposes for which such goods are used; and
>
> (d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
>
> (e) Are adequately contained, packaged, and labeled as the agreement may require; and
>
> (f) Conform to the promises or affirmations of fact made on the container or label if any.

The implied warranty of merchantability does not "impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Am. Suzuki Motor Corp. v. Super. Ct.*, 37 Cal. App. 4th 1291, 1295 (1995) (citation omitted). Accordingly, a defect must render the product unfit for its ordinary purpose. *See id. See also Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26 (2007) ("We reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose.").

Under California's Song-Beverly Consumer Warranty Act (the "Song-Beverly Act"), the duration of the implied warranty of merchantability is "[no] less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer." Cal. Civ. Code § 1791.1(c). *See also Tietsworth Sears, Roebuck and Co.*, No. C 09-00288, 2009 WL 1363548, at *3 (N.D. Cal. May 14, 2009) ("The duration of the implied warranty of merchantability [under § 1791.1] is coextensive with an express warranty, but in no case is shorter than sixty days or longer than one year following sale of the goods."); *Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212, 230

(2006) ("duration of the implied warranty of merchantability under California law is limited to one year."). In addition, the express warranty provided by Apple limited the duration of any implied warranty to one year after purchase. Klestoff Decl. Ex. A at 2

The Berenblat Plaintiffs argue that the one-year limitation imposed by law does not apply because the defect was "latent" and Apple was aware of the defect when it sold the computers. "Implied warranties extend to latent defects." *Brittalia Ventures v. Stuke Nursery Co., Inc*., 153 Cal. App. 4th 17, 24 (2007). In addition, Plaintiffs have brought their implied warranty claim under the Commercial Code rather than the Song-Beverly Act.[4] While § 1791.1 of the Song-Beverly Act limits the duration of the implied warranty of merchantability to one year, a recent decision by the California Court of Appeal has called into question the applicability of the limitation set forth in § 1791.1, at least as it applies to latent defects. *See Mexia v. Rinker Boat Co., Inc*., 174 Cal. App. 4th 1297 (2009) (§ 1791.1 does not bar an action for breach of implied warranty based upon a latent defect discovered by the purchaser more than one year after the sale).

With respect an implied warranty claim brought pursuant to the Commercial Code, *Mexia* holds that the Song-Beverly Act acts supplements the California Commercial Code, and was intended to "provide clarity" with respect to consumer rights. *Mexia*, 174 Cal. App. 4th at 1304. The court concluded that the omission of a time limit from § 2314 should be interpreted to mean that "there is no 'duration' of the implied warranty under the Uniform Commercial Code in any meaningful sense; the product is either merchantable or not (and a breach of the implied warranty occurs or not) only at the time of delivery." *Id*. *See also Larsen v. Nissan N. Am.*, No. A121838, 2009 WL 1766797, at *5 n.6 (Cal. Ct. App. 1st Dist. June 23, 2009) (unpublished) ("[§ 2314] also imposes a warranty of merchantability, but it does not contain a time limit. In the absence of any indication in the statute that it is intended to supersede or extend Civil Code section 1791.1, we assume that [§ 2314] does not extend the implied warranty with respect to the durability of a product beyond the one year maximum contained in Civil Code section 1791.1."). Plaintiffs thus

[4] The initial complaint alleged a breach of the implied warranty under the Song-Beverly Act.

argue that they may bring a claim under the Commercial Code more than one year after the time of sale.

Apple contends that this holding cannot be correct because it essentially would grant consumers an indefinite warranty, offending the policy considerations that disfavor unlimited warranties. *See generally Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2006); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964 (N.D. Cal. 2008). However, as noted by the court in *Mexia*, any breach of contract claim brought under the Commercial Code must be brought within four years of when the cause of action accrued, which in the case of a latent defect occurs at the time of sale. *Mexia*, 174 Cal. App. 4th at 1306. Accordingly, at the very least it appears that the Berenblat Plaintiffs are required to bring a claim for breach of the implied warranty of merchantability within four years of the time of sale, a requirement that is satisfied by the facts as set forth in the operative complaint.[5]

Apple also cites the one-year limitation contained in the express warranty, which appears to bar Plaintiffs from raising an implied warranty claim at this point in time. In response, Plaintiffs contend that there is a question of fact with respect to whether the implied warranty was binding. However, the limitation on the implied warranty appears to comply with the requirements of Cal. Com. Code § 2316, and the Berenblat FAC is devoid of factual allegations that would support an exception to an otherwise binding contractual agreement. Accordingly, the motion to dismiss the implied warranty claim will be granted. Plaintiffs will be granted leave to amend their pleading to include additional allegations with respect to the express warranty and the limitations contained therein. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (the bare "assertion of an unlawful agreement was a 'legal conclusion' and, as such, was not entitled to the assumption of truth.") (citing *Twombly*, 550 U.S. at 555).

[5] To the extent that *Mexia* conflicts with this Court's orders in *Tietsworth* and *Stearns v. Select Comfort Retail Corp.*, No. 08-2746, 2008 WL 4542967 (N.D. Cal. Oct. 1, 2008), the Court notes that *Mexia* issued after those decisions. In addition, all of the named plaintiffs in *Stearns* purchased their allegedly defective products more than four years prior to bringing suit, and thus their claims under Cal. Com. Code § 2314 or the analogous provision under the Uniform Commercial Code are barred even in light of *Mexia*.

2. UCL Claim

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Civ. Code § 17200. Accordingly, "[a]n act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). For an action based upon an allegedly unlawful business practice, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). A UCL claim predicated on unfair business practices may be grounded upon a violation of a statute, *see Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995), or be a "standalone" claim based on an alleged act that "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). *See also Cel-Tech*, 20 Cal. 4th at 180 ("[A] practice may be deemed unfair even if not specifically proscribed by some other law."). A claim based upon the fraud prong may be brought based upon conduct akin to common-law fraud or a alleged course of conduct that is likely to deceive the public. *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1274 (2006) ("A violation can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage. Instead, it is only necessary to show that members of the public are likely to be deceived.").

The Berenblat FAC sets forth the following allegations with respect to the UCL claim:

> Apple has engaged in unlawful and unfair business acts or practices in California and nationwide, in violation of Cal. Bus. & Prof. Code § 17200, by manufacturing and selling PowerBook computers with defective memory slots to Plaintiffs and other members of the Class, by failing to use reasonable care to test the memory slots in its PowerBook computers prior to sale, and by continuing to sell PowerBook computers with defective memory slots even after learning that the memory slots in its PowerBook computers were defective, all in violation of Cal. Comm. Code § 2314, U.C.C. §§ 2-314, and the common law.

Berenblat FAC ¶ 59. Plaintiffs allege further that:

> Defendant's conduct in manufacturing and selling computers with an inherent defect that was substantially certain to result in malfunction during the computers' useful lives caused and continues to cause substantial injury to consumers, including Plaintiffs and the other members of the Class. The California Commercial Code, as well as other state and federal law, embodies the public policy that prohibits manufacturers from selling such defective goods to consumers and then refusing to repair or replace the defective product, particularly when the seller knows of the defect.

*Id.* ¶ 60. Accordingly, Plaintiffs' UCL claim appears to be predicated not only on the alleged breach of implied warranty but also a common-law tort sounding in negligence and a generalized claim of consumer-harm.

As an initial matter, the Berenblat FAC does not appear to allege any common-law claims such as negligence, which even under Rule 8 requires factual allegations supporting the elements of the claim. *See Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, No. C-07-0635, 2007 WL 1455903, at *3 (N.D. Cal. May 16, 2007) ("While the elements of the UCL Claim derive from state substantive law, the degree of specificity required is governed by the Federal Rules of Civil Procedure."). *See also Hartless v. Clorox Co.*, No. 06-CV-2705, 2007 WL 3245260, at *5 (S.D. Cal. Nov. 2, 2007) (common-law claims cannot form basis for UCL claim). In addition, as discussed above, Plaintiffs have not yet alleged a cognizable claim under Cal. Com. Code § 2314, and thus as currently pled the Berenblat FAC has not stated a claim under the unlawful prong of the UCL. Finally, a standalone claim under the unfair prong of the UCL requires allegations that "the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Daugherty*, 144 Cal. App. 4th at 839. In addition, "[t]he failure to disclose a defect that might, or might not, shorten the effective life span of [a product] that functions precisely as warranted throughout the term of its express warranty cannot be characterized as causing a substantial injury to consumers, and accordingly does not constitute an unfair practice under the UCL." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026-27 (9th Cir. 2008) (quoting *Daugherty*, 144 Cal. App. 4th at 839). In the instant case, the defect did not manifest itself until after the expiration of the express warranty. Accordingly, the UCL claim

will be dismissed, with leave to amend.[6]

3. Unjust Enrichment

The Berenblat Plaintiffs' claim for unjust enrichment is premised on the same factual allegations underlying their implied warranty and UCL claims. However, a claim for unjust enrichment cannot stand alone without a cognizable claim under a quasi-contractual theory or some other form of misconduct. *See Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008) ("unjust enrichment is not a cause of action. Rather, it is a general principle underlying various doctrines and remedies.") (citation omitted); *Melchior v. New Line Prods., Inc*., 106 Cal. App. 4th 779, 793 (2003) ("there is no cause of action in California for unjust enrichment. 'The phrase "Unjust Enrichment" does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so.'") (quoting *Lauriedale Assocs., Ltd. v. Wilson*, 7 Cal. App. 4th 1439, 1448 (1992)). Accordingly, the Plaintiffs' claim for unjust enrichment also will be dismissed with leave to amend. *See Oestreicher v. Alienware Corp*., 544 F. Supp. 2d 964, 975 (N.D. Cal. 2008) ("since plaintiff's fraud-based claims have been dismissed, plaintiff has no basis for its unjust enrichment claim."). *See also Sanders v. Apple Inc.*, No. C 08-1713, 2009 WL 150950, at *9 (N.D. Cal. Jan. 21, 2009) ("[unjust enrichment] claim will depend upon the viability of the Plaintiffs' other claims.").

B. Vail Complaint

1. CLRA Claim

"The CLRA proscribes both active misrepresentations about the standard, quality, or grade of goods, as well as active concealment related to the characteristics or quality of goods that are contrary to what has been represented about the goods." *Morgan v. Harmonix Music Sys., Inc*., No. C08-5211, 2009 WL 2031765, at *3 (N.D. Cal. July 07, 2009) (citing *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 36 (1972)). Vail alleges that Apple violated (1) Cal. Civ. Code § 1770(a)(5) by representing "that its goods have characteristics, uses, or

---

[6] To the extent that Plaintiffs' UCL claim is premised on allegations that Apple knew of the defect and deliberately misled consumers sounds, the amended pleadings may be subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See Oestreicher*, 544 F. Supp. 2d at 974-75.

benefits which they do not have;" (2)§ 1770(a)(9) by advertising "its goods with intent not to sell them as advertised;" and (3) § 1770(a)(16) because it represented "that its goods have been supplied in accordance with a previous representation when they have not." Vail Compl. ¶ 36. Vail premises her CLRA claim both on an alleged misrepresentation (*i.e.*, the PowerBook memory slot could be expanded to 2 GB) and on an alleged omission (*i.e.*, failure to disclose that the memory slots were defective). The complaint does not allege that Apple made any specific representation with respect to the durability of the memory slot. In addition, it is unclear if Vail is alleging that the memory slot never worked or that it failed prematurely. Accordingly, with respect to the alleged misrepresentation, Vail must allege more than the bare fact that Apple stated that the PowerBook could support 2 GB of memory. If the memory slots were functional throughout the period of the express warranty, a later failure would not conflict with a statement regarding memory capacity because there was no representation as to the durability of the memory slot. Similar claims under the CLRA have been rejected because otherwise the statement describing any feature would be actionable when either the feature—or product as a whole—eventually failed. *See Harmonix*, 2009 WL 2031765, at *3 (where pedal to drum kit failed, statement that drums could be played was not actionable because otherwise "any statement made by defendants that the Rock Band game could be played with drums was false because for certain customers, the pedal eventually failed."); *Long v. Hewlett-Packard Co.*, No. C 06-02816, 2007 WL 2994812, at *7 (N.D. Cal. July 27, 2007), *aff'd*, 316 Fed. Appx. 585 (9th Cir. 2009) ("Plaintiffs' contention that the word 'notebook' is actionable is unavailing. The word 'notebook' describes the type of product being sold; it does not constitute a representation regarding the quality of the computer's parts, nor a representation regarding the consistency or longevity of the computer's operation.").

For an alleged omission to be actionable under the CLRA, "the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty*, 144 Cal. App. 4th at 835. *See also Bardin*, 136 Cal. App. 4th at 1276 (CLRA claim requires allegations that manufacturer was "'bound to disclose' [the defect]…or allege[] facts showing [that the manufacturer] ever gave any information of other

facts which could have the likely effect of misleading the public"). In the instant action, Vail alleges that Apple had a duty to disclose a known defect. As discussed above, as currently framed the operative complaint does not allege an actionable misrepresentation. Nonetheless, a plaintiff may "successfully pursue a CLRA claim [based on a fraudulent omission]…if [the manufacturer] was 'obliged to disclose' the potential for problems." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094 (N.D. Cal. 2007). Such a duty to disclose exists if one of the following four circumstances is present: (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff, or (4) the defendant makes partial representations but also suppresses some material facts. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997). Vail argues that the complaint sets forth allegations that satisfy the second and third *LiMandri* factors. Both of these factors "require the existence of a material fact." *Falk*, 496 F. Supp. 2d at 1095. Materiality exists if the omitted information would have caused a reasonable consumer to behave differently if he or she had been made aware of the information. *See Oestreicher*, 544 F. Supp. 2d at 971. *See also Falk*, 496 F. Supp. 2d at 1095 ("Materiality, for CLRA claims, is judged by the effect on a 'reasonable consumer.'") (citation omitted).

"According to all relevant case law, defendants are only under a duty to disclose a known defect in a consumer product when there are safety concerns associated with the product's use." *Harmonix*, 2009 WL 2031765, at *4 (citing *Daugherty*, 144 Cal. App. 4th at 835-36; *Bardin*, 136 Cal. App. 4th at 1270; *Long*, 2007 WL 2994812, at *8). *See also Oestreicher*, 544 F. Supp. 2d at 971 ("safety consideration" an "integral" factor in the materiality determination). Accordingly, the motion to dismiss the CLRA will be granted with leave to amend.

2. UCL Claim

For the same reasons discussed above with respect to Vail's CLRA claim based on an affirmative misrepresentation, the Court finds that those same statements do not support an actionable claim under any of the UCL prongs. *See Long*, 2007 WL 2994812, at *7. Likewise, Vail has not pled a claim based on any fraudulent omission or unfairness to consumers because

the memory slots appear to have functioned throughout the term of the express warranty. *See Clemens*, 534 F.3d at 1026-27. Accordingly, Vail's UCL claim will be dismissed, with leave to amend.

**IV. ORDER**

Good cause therefor appearing, the motions to dismiss are GRANTED with leave to amend. Any amended complaint shall be filed within thirty (30) days of the date of this order.

DATED: August 21, 2009

JEREMY FOGEL
United States District Judge

This Order has been served upon the following persons:

Alexei Klestoff aklestoff@mofo.com, mgimenez@mofo.com

Andrew David Muhlbach amuhlbach@mofo.com, mgimenez@mofo.com

Christine M. Ford cford@mdpcelaw.com

Eric H. Gibbs ehg@girardgibbs.com, ace@girardgibbs.com, ams@girardgibbs.com, gam@girardgibbs.com, mcr@girardgibbs.com, smq@girardgibbs.com

Eric S. Pettit pettit@caldwell-leslie.com, mejia@caldwell-leslie.com

Jeffrey I Carton jcarton@mdpcelaw.com

Jerome Noll jnoll@mdpcelaw.com

Penelope Athene Preovolos ppreovolos@mofo.com, kfranklin@mofo.com

Robyn Carrico Crowther crowther@caldwell-leslie.com, hernandez@caldwell-leslie.com, pettit@caldwell-leslie.com, robinson@caldwell-leslie.com, strother@caldwell-leslie.com, wilson@caldwell-leslie.com

Andrew N. Friedman afriedman@cohenmilstein.com