1    MEISELMAN, DENLEA, PACKMAN,
     CARTON & EBERZ P.C.
2    JEFFREY I. CARTON (*pro hac vice*)
     *jcarton@mdpcelaw.com*
3    JEROME NOLL (*pro hac vice*)
     *jnoll@mdpcelaw.com*
4    CHRISTINE M. FORD (*pro hac vice*)
     *cford@mdpcelaw.com*
5    1311 Mamaroneck Avenue
     White Plains, New York 10605
6    Telephone:  (914) 517-5000
     Facsimile:   (914) 517-5055
7
     CALDWELL LESLIE & PROCTOR, PC
8    ROBYN C. CROWTHER, State Bar No. 193840
     *crowther@caldwell-leslie.com*
9    ERIC S. PETTIT, State Bar No. 234657
     *pettit@caldwell-leslie.com*
10   1000 Wilshire Boulevard, Suite 600
     Los Angeles, California  90017-2463
11   Telephone: (213) 629-9040
     Facsimile: (213) 629-9022
12
     Attorneys for Plaintiffs Berenblat, Personette,
13   Simpson, Miller, and all others similarly situated
     (Additional Counsel on signature page)
14

15           **UNITED STATES DISTRICT COURT**

16         **NORTHERN DISTRICT OF CALIFORNIA**

            **SAN JOSE DIVISION**

| | |
|---|---|
| 17   REUBEN BERENBLAT, ANDREW PERSONETTE, EARL C. SIMPSON, LAURA MILLER, On behalf of themselves and all others similarly situated, | Case No. C-08-04969 JF (PVT)<br>Case No. C-09-01649 JF (PVT) |
| 18 | |
| 19            Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |
| 20      v. | |
| 21   APPLE INC., | |
| 22        Defendant. | |
| 23   THOMAS WAGNER, SCOTT MEYERS, On behalf of themselves and all others similarly situated, | Date:       February 5, 2010<br>Time:      9:00 a.m.<br>Courtroom:  3 |
| 24 | |
| 25           Plaintiffs, | |
| 26      v. | |
| 27   APPLE, INC., | |
| 28        Defendant. | |

CALDWELL,
LESLIE &
PROCTOR

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
(Case No. C-08-04969 JF (PVT) and Case No. C-09-01649 JF (PVT))

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ISSUES TO BE DECIDED .................................................................................................... 2

FACTUAL BACKGROUND .................................................................................................. 2

    *The Introduction of The PowerBook G4* ............................................................ 3

    *Apple Conceals the Growing Problems With PowerBook Memory Slots* ........................... 4

    *Apple Refuses To Correct Its Defective Computers* ............................................... 5

ARGUMENT ........................................................................................................................ 5

I.     THE APPLICABLE STANDARD FOR A MOTION TO DISMISS ................................ 5

II.    THE SECOND AMENDED COMPLAINT STATES A CLAIM FOR BREACH
      OF THE IMPLIED WARRANTY OF MERCHANTABILITY ...................................... 6

    A.    Apple Breached The Implied Warranty Of Merchantability By
        Manufacturing A Product With A Latent Defect That Existed At The Time
        Of Sale .................................................................................................... 6

    B.    Apple's Disclaimer Of Implied Warranties Is Ineffective ......................................... 8

        1.    Apple Improperly Provided The Supposed Disclaimer After It
            Consummated A Sale To A Consumer ......................................................... 8

        2.    Apple's Warranty Disclaimer And Durational Limits Are
            Unconscionable ......................................................................................... 9

            (a)    The Limitation On Implied Warranties Is Procedurally
                Unconscionable ............................................................................... 10

            (b)    The Limitation On Implied Warranties Is Substantively
                Unconscionable ............................................................................... 11

III.   THE SECOND AMENDED COMPLAINT STATES A CLAIM UNDER
      CALIFORNIA'S UNFAIR COMPETITION LAW ...................................................... 13

    A.    Apple's Knowing Sale of a Defective Product Is Unlawful ...................................... 13

    B.    Plaintiffs Sufficiently Plead A UCL Claim Under The "Fraudulent
        Practices" Prong In Accordance With Rule 9(b) .................................................. 13

        1.    Apple Committed A Fraudulent Business Practice ....................................... 13

        2.    The Second Amended Complaint Meets The Standards Of Rule 9(b) ....... 15

CALDWELL,
LESLIE &
PROCTOR

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
(Case No. C-08-04969 JF (PVT) and Case No. C-09-01649 JF (PVT))

C.   Apple's Manufacture and Sale of Defective PowerBooks Constitutes An Unfair Business Practice In Violation of the UCL.................................................. 18

1.   Apple "Unfairly" Injured Consumers ........................................................ 18

2.   Plaintiffs' UCL Claim Under the "Unfairness Prong" Is Not Subject To The Heightened Pleading Standard Of Rule 9(b) .................................. 19

IV.   THE SECOND AMENDED COMPLAINT ALLEGES A CAUSE OF ACTION FOR UNJUST ENRICHMENT ........................................................................ 20

CONCLUSION ............................................................................................................ 21

CALDWELL,
LESLIE &
PROCTOR

**TABLE OF AUTHORITIES**

Page(s)

<u>Cases</u>

*A&M Produce v. FMC Corp.,*
    135 Cal.App.3d 473 (1982) .......................................................................10

*AICCO, Inc. v. Ins. Co. of N. Am.,*
    90 Cal.App.4th 579 (2001) .......................................................................13

*Aral v. EarthLink, Inc.,*
    134 Cal. App.4th 544 (2005) ....................................................................11

*Berenblat v. Apple, Inc.,*
    2009 WL 2591366 (N.D. Cal. Aug. 21, 2009).............................................6

*Bowdoin v. Showell Growers, Inc.,*
    817 F.2d 1543 (11th Cir. 1987) ..................................................................9

*Brittalia Ventures v. Stuke Nursery Co., Inc.,*
    153 Cal.App.4th 17 (2007) .....................................................................6, 7

*Bussian v. DaimlerChrysler Corp.,*
    411 F.Supp.2d 614 (M.D.N.C. 2006) .......................................................11

*Carlson v. General Motors Corporation,*
    883 F.2d 287 (4th Cir. 1989) ...................................................................11

*Cartwright v. Viking Indus., Inc.,*
    249 F.R.D. 351 (E.D. Cal. 2008) ................................................................6

*Chamberlain v. Ford Motor Co.,*
    369 F.Supp.2d 1138 (N.D. Cal. 2005) .....................................................13

*Cooper v. Pickett,*
    137 F.3d 616 (9th Cir. 1997) ...................................................................15

*Cooper v. Samsung Electronics America, Inc.,*
    2008 WL 4513924 (D.N.J. Sept. 30, 2008) ..............................................11

*Daugherty v. American Honda Motors Co., Inc.,*
    144 Cal.App.4th 824 (2006) .......................................................................7

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

Cases

*Dorman v. International Harvester Co.*,
        46 Cal.App.3d 11 (1975) ..............................................................................9

*First Nationwide Savings v. Perry*,
        11 Cal.App.4th 1657 (Cal. Ct. App. 1992) ..................................................20

*Garlock Technologies, LLC v. Nak Sealing Technologies Corp.*,
        148 Cal.App.4th 937 (2007) ..........................................................................7

*Ghirardo v. Antonioli*,
        14 Cal.4th 39 (1996) ....................................................................................20

*Gilead Sciences Sec. Litig.*,
        536 F.3d 1049 (9th Cir. 2008) .......................................................................6

*Gonzalez v. Pepsico, Inc.*,
        489 F.Supp.2d 1233 (D. Kan. 2007) ...........................................................17

*Gruen v. EdFund*,
        2009 WL 2136785 (N.D. Cal. July 15, 2009) .............................................19

*Harper v. LG Electronics USA, Inc.*,
        595 F.Supp.2d 486 (D.N.J.2009) .................................................................16

*Harrison v. Westinghouse Savannah River Co.*,
        176 F.3d 776 (4th Cir. 1999) .......................................................................15

*Hauter v. Zogarts*,
        14 Cal.3d 104 (1975) .....................................................................................9

*Hewlett-Packard Co. v. Superior Court*,
        167 Cal.App.4th 87 (2008) ............................................................................8

*Hicks v. Kaufman and Broad Home Corp.*,
        89 Cal.App.4th 908 (2001) ............................................................................7

*Hirsch v. Bank of America*, N.A.,
        107 Cal.App.4th 708 (2003) ........................................................................20

# TABLE OF AUTHORITIES
### (Continued)

Page(s)

Cases

*Hovsepian v. Apple, Inc.,*
   2009 WL 2591445 (N.D. Cal., Aug. 21, 2009)................................................................17

*Hughes Tool Co. v. Max Hinrichs Seed Co.,*
   112 Cal.App.3d 194 (1980) ...........................................................................................8

*In re Mattel, Inc.,*
   588 F.Supp.2d 1111 (C.D. Cal. 2008) ........................................................................20

*Kasky v. Nike, Inc.,*
   27 Cal.4th 939 (2002)..............................................................................................13, 18

*Laster v. AT&T Mobility, Inc.,*
   584 F.3d 849 (9th Cir. 2009) .....................................................................................10

*Lazy Y Ranch Ltd. v. Behrens,*
   546 F.3d 580 (9th Cir. 2008) ....................................................................................5, 6

*Lectrodryer v. Seoulbank,*
   77 Cal.App.4th 723 (2000) ........................................................................................20

*Lennar Homes, Inc. v. Masonite Corp.,*
   32 F.Supp.2d 396 (E.D.La. 1998) .............................................................................12

*Lozano v. AT&T Wireless Serv., Inc.,*
   504 F.3d 718 (9th Cir. 2007) .....................................................................................18

*LWT, Inc. v. Childers,*
   19 F.3d 539 (10th Cir. 1994) .......................................................................................9

*Mexia v. Rinker Boat Co., Inc.,*
   174 Cal.App.4th 1297 (2009) ......................................................................................7

*McKell v. Washington Mut., Inc.,*
   142 Cal. App.4th 1457 (2006) ...............................................................................13, 18

*Moore v. Hubbard & Johnson Lumber Co.,*
   149 Cal.App.2d 236 (1957) .........................................................................................6

*Morgan v. AT&T Wireless Services, Inc.,*
   177 Cal.App.4th 1235 (2009) .................................................................................13, 14

- v -

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
(Case No. C-08-04969 JF (PVT) and Case No. C-09-01649 JF (PVT))

# TABLE OF AUTHORITIES
(Continued)

Page(s)

<u>Cases</u>

*Nagrampa v. MailCoups, Inc.,*
469 F.3d 1257 (9th Cir. 2006) ..........................................................................11

*Oestreicher v. Alienware Corp.,*
544 F.Supp.2d 964 (N.D. Cal. 2008) ................................................................17

*Olvera v. El Pollo Loco Inc.,*
173 Cal.App.4th 447 (2009) .............................................................................10

*Parada v. Superior Court,*
176 Cal.App.4th 1554 (2009) ...........................................................................10

*Payne v. Fujifilm U.S.A, Inc.,*
2007 WL 4591281 (D.N.J. Dec. 28, 2007).......................................................12

*Plascencia v. Lending 1st Mortgage,*
583 F.Supp.2d 1090 (N.D. Cal. 2008) ..............................................................13

*Schnall v. The Hertz Corp.,*
78 Cal.App.4th 1144 (2000) .............................................................................18

*SEC v. Yuen,*
221 F.R.D. 631 (C.D. Cal. 2004) ......................................................................15

*Tietsworth v. Sears Roebuck & Co.,*
2009 WL 3320486 (N.D. Cal., Oct. 13, 2009)..................................................17

*Vess v. Ciba-Geigy Corp.,*
317 F.3d 1097 (9th Cir. 2002) ..........................................................................19

*Watts v. Jackson Hewitt Tax Service Inc.,*
579 F.Supp.2d 334 (E.D.N.Y. 2008) ................................................................15

*Williams v. Gerber Prods. Co.,*
552 F.3d 934 (9th Cir. 2008) ............................................................................18

<u>Statutes</u>

15 U.S.C. § 2308(b) ....................................................................................................9

15 U.S.C. § 2308(c) ....................................................................................................8

- vi -

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

Statutes

Bus. & Prof. Code § 17200 .................................................................13

Civ. Code § 1670.5 ..............................................................................9

Comm. Code § 2314 ...........................................................................10

Comm. Code § 2314(1) .........................................................................6

Comm. Code § 2314(2)(c) .....................................................................6

Fed. R. Civ. P. 9(b) ........................................................................15, 19

# PRELIMINARY STATEMENT

Apple's current marketing campaign touts the reliability of its brand of computers over personal computers or "PCs" manufactured by its competitors. Indeed, in television commercials, Apple itself promotes a "five year useful life" for computing products. Apple has carefully cultivated an atmosphere of trust and reliability over the years with its "genius bars" and other innovative services. Believing that Apple produces a reliable product, consumers each have spent thousands on PowerBook G4 computers only to learn that the product had an inherent defect that would substantially limit their capabilities within the computers' useful life.

Apple does not contest that an inherent defect exists within the memory slots of its PowerBook G4 computers. Rather, Apple seeks to escape liability by asserting that its express warranty limits any legal obligations to a one-year term. However, the law provides otherwise. Under California law, a latently manifesting defect is a defect. Thus, the product is considered to be defective at the time of purchase. Consumers have four years from the date of purchase to assert a claim for breach of the implied warranty of merchantability.

Apple asserts that it disclaimed warranties beyond one year and, as a result, consumers have no remedy for purchasing a defective product. However, Apple's disclaimer of warranties is ineffective. Apple failed to provide the warranties to consumers prior to sale and the express language of the warranty prohibits any negotiation whatsoever over the warranty's terms. Thus, Apple's disclaimer is a classic contract of adhesion and procedurally unconscionable. Moreover, the terms of the warranty (a one-year duration) unduly favors Apple and is substantively unconscionable. Apple knew of the PowerBook G4's inherent defect before marketing it, and made efforts to thwart public discussion, including deleting complaints about the product from discussion forums on the Apple website. Indeed, as complaints about the PowerBook G4 escalated, Apple concealed the problems. Apple did so knowing that it secretly planned to retire the PowerBook brand in favor of its next generation of computers, the MacBook Pro. Apple also knew consumers expected more than one year's use of their PowerBook computers and even

CALDWELL,
LESLIE &
PROCTOR

1  marketed the memory slot as providing "future" memory upgrades.  Apple concealed the defect

2  and continued to profit handsomely from sales of computers it knew would fail prematurely.

3      Apple's deceptive scheme breaches the implied warranty of merchantability and also

4  constitutes a violation of California's Unfair Competition Law ("UCL"), which prohibits

5  unlawful, unfair and fraudulent business practices.  In addition, Apple was unjustly enriched by

6  receiving full value from the sale of a defective product.  Apple should be required to answer for

7  its wrongful conduct and discovery should be permitted to allow Plaintiffs to uncover the full

8  scope of Apple's deception.

9  **ISSUES TO BE DECIDED**

10     1.      Whether Apple can shield itself from liability for breaches of implied warranties

11  when it knowingly placed a defective product into the stream of commerce and concealed the

12  defect.

13     2.      Whether the Second Amended Complaint adequately alleges that Apple's

14  manufacture and sale of a product it knew to be defective constituted an unlawful, unfair or

15  fraudulent business practice under the UCL.

16     3.      Whether the Second Amended Complaint's allegations that Apple received and

17  retained substantial profits from sales of a product that Apple knew to be defective state a claim

18  for unjust enrichment.

19  **FACTUAL BACKGROUND**

20     Defendant Apple Inc. ("Apple") is a publicly traded company engaged in the business of

21  designing, manufacturing, marketing, distributing and selling personal computers and related

22  products and services through its own retail stores, online, direct sales, third party wholesalers and

23  resellers.  Second Amended Complaint ("SAC") ¶ 19.  Following its establishment in 1976, Apple

24  developed a cult-like following for its computers that were promoted as being uniquely engineered

25  and aesthetically pleasing.  SAC ¶ 20.  However, by the mid-1990s, Apple rapidly lost market-

26  share and introduced a series of products that were deemed financial failures.  SAC ¶ 21.  In an

27  attempt to reinvigorate its brand, Apple partnered with IBM to create a new computing platform

28

CALDWELL,
LESLIE &
PROCTOR

1   and to reverse its fortunes.  Apple's reinvention included the introduction of the initial PowerBook

2   series of computers.  SAC ¶ 22.

3   *The Introduction of The PowerBook G4*

4   　　　In or about January 2001, Apple began designing, manufacturing, warranting, advertising,

5   marketing, selling and providing PowerBook G4 laptop computers to consumers throughout the

6   United States.  SAC ¶ 23.  Between 2001 and 2003, Apple produced the Titanium PowerBook G4;

7   between 2003 and 2006, the Aluminum models were produced.  SAC ¶ 23.  When the Aluminum

8   PowerBook G4s were released in January 2003, Apple marketed them as being designed to

9   exacting standards and touted their many features, including the fact that each Aluminum

10  PowerBook G4 has two memory slots.  SAC ¶ 24.  The memory slots are an essential feature of

11  the computer, and are marketed so as to give consumers the ability to expand the PowerBook's

12  random access memory (RAM).  *Id.*[1]

13  　　　Indeed, Apple represented to PowerBook purchasers on packaging, in the technical

14  specifications, and in the PowerBook product manual, that the computer could support additional

15  RAM up to a total of 2GB when the consumer needed to expand memory.  SAC ¶ 26.  Apple

16  maintained this representation from at least May 2001 through December 2005.  For example, the

17  PowerBook Technology Overview provided, "For a considerable performance improvement when

18  working with large files, the memory in the 12-inch model can be expanded to 1.25Gb, and the

19  15-inch and 17-inch models can accommodate up to 2GB.  Both the 15-inch and 17-inch models

20  come with 512MB of memory … leaving a slot open for future memory upgrades."  *Id.*

21

22

23

24  _____

25  [1] RAM is the main memory of a computer, in which data can be stored or retrieved from all
    locations at the same time.  As a laptop's memory fills, the machine will slow down.  The ability

26  to expand the memory is material to purchasers, and affects the product's price.  Reasonable
    consumers expect that they would not need to expand the memory, and use the extra memory

27  slots, until after a year or more – or beyond the limited one-year warranty that came standard with
    the Apple PowerBook.  SAC ¶ 24.

28

CALDWELL,
LESLIE &
PROCTOR

-3-
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
(Case No. C-08-04969 JF (PVT) and Case No. C-09-01649 JF (PVT))

*Apple Conceals the Growing Problems With PowerBook Memory Slots*

Based on Apple's own admissions, however, certain of its PowerBook G4 computers were manufactured with defective memory slots. Indeed, either or both of the memory slots have an inherent defect existing at the time the computer is manufactured. SAC ¶ 27.

Although the useful life of a laptop or notebook computer is five years, the inherent defect in the Apple PowerBook G4 computer memory slots renders the computers substantially certain to malfunction during the computer's useful life. SAC ¶ 30. As early as November 2004, consumers began posting complaints about the PowerBook memory slots on Apple's website. SAC ¶ 31. As other PowerBook users encountered memory slot problems, they posted queries on Apple's website. SAC ¶ 32. With the number of consumer complaints growing, Apple deleted a discussion thread containing over 350 posts about the PowerBook memory slot defect from its website. *Id.* Despite Apple's attempts to thwart the public discussion of the PowerBook defects, consumers continued to complain about their PowerBook memory slots on the Apple website. *Id.* The discussion forum spans over 312 pages, with hundreds of comments about the PowerBook memory slot defect. *Id.*

Frustrated by Apple's refusal to repair thousands of defective computers, consumers created an online petition beseeching Apple to provide a remedy for the widespread product defect. SAC ¶ 33. To date, the online petition includes over 5,125 signatures and numerous accounts of defective PowerBook memory slots. *Id.*

As complaints about the defective PowerBooks increased, Apple's CEO announced that Apple would begin producing Intel-based Mac computers in 2006. SAC ¶ 34. As part of its transition to an Intel-based system, Apple announced the retirement of the PowerBook brand. *Id.* While the June 6, 2005 announcement of the partnership between Apple and Intel stunned consumers, according to the technology press, the deal between Apple and Intel was anything but sudden. The technological sea-change in switching to Intel processors was developed in secret over a period of years. SAC ¶ 35. Thus, consistent with its plans to retire the PowerBook brand, Apple disregarded the obvious defect in its soon-to-be discontinued line of products. SAC ¶ 36.

CALDWELL.
LESLIE &
PROCTOR

In connection with its transition to an Intel processor, Apple began to aggressively market a new laptop computer – the MacBook Pro.  SAC ¶ 37.  The MacBook Pro was designed to replace the PowerBook in Apple's product line.  Indeed, Apple's conversion to Intel processors was completed ahead of schedule – as complaints about the PowerBook memory slot defect escalated.  SAC ¶ 38.[2]

***Apple Refuses To Correct Its Defective Computers***

Despite the inherent defect existing in the memory slots at the time the computers were manufactured, Apple refuses to repair malfunctioning PowerBook G4 computers or reimburse consumers for the cost of the repairs.  SAC ¶ 39.  Apple has maintained its refusal, although the inherent defect results in malfunction during the PowerBook's useful life.  *Id.*  Apple claims that it is not obligated to repair defective PowerBook G4 computers when the inherent defect resulted in malfunction outside Apple's purported one-year limited warranty period.  However, rather than the result of natural "wear and tear" on its machines, the memory slot defect exists at the time of manufacture, and renders the PowerBook substantially certain to malfunction during the computer's useful life.  The more than 5,125 people who have signed the online petition complaining of their defective PowerBooks can attest to this.  Because the defect existed within the warranty period, Apple is obligated to repair, replace, correct, or otherwise provide relief to its customers.

## ARGUMENT

### I.    THE APPLICABLE STANDARD FOR A MOTION TO DISMISS

"To survive a motion to dismiss for failure to state a claim, the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'"  *Lazy Y Ranch Ltd. v. Behrens*,

---

[2] After it ceased manufacturing PowerBook G4 computers, Apple admitted that affected PowerBook G4 computers exhibit at least one of the following symptoms upon installation of RAM memory in the lower memory slot: (1) The computer does not start up; or (2) The computer does not recognize that the lower memory slot is filled, thus degrading system performance because the memory in only one slot is recognized.  Apple has also admitted that the problems may only occur intermittently, and that an owner of a PowerBook with a defective memory slot may not know or become aware of the defect until months, or years, after installation of additional memory.

CALDWELL.
LESLIE &
PROCTOR

1  546 F.3d 580, 588 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

2  "In general, the inquiry is limited to the allegations in the complaint, which are accepted as true

3  and construed in the light most favorable to the plaintiff." *Id.* "[A] district court ruling on a

4  motion to dismiss is not sitting as a trier of fact." *Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1057

5  (9th Cir. 2008). "[S]o long as the plaintiff alleges facts to support a theory that is not facially

6  implausible," the motion to dismiss must be denied. *Id.* Indeed, the "court is bound to give

7  plaintiff the benefit of every reasonable inference to be drawn from the 'well-pleaded' allegations

8  of the complaint." *Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 353 (E.D. Cal. 2008). The

9  SAC is more than sufficient under these well-settled standards.

10  **II.      THE SECOND AMENDED COMPLAINT STATES A CLAIM FOR BREACH OF**

11  **         THE IMPLIED WARRANTY OF MERCHANTABILITY**

12       Pursuant to California Commercial Code § 2314, implied in every contract of sale is a

13  warranty of merchantability.  Cal. Comm. Code § 2314(1).  For goods to be merchantable, they

14  must be "fit for the ordinary purpose for which such goods are used." Cal. Comm. Code §

15  2314(2)(c); *see also Brittalia Ventures v. Stuke Nursery Co., Inc.*, 153 Cal.App.4th 17, 27 (2007).

16  As this Court has recognized, the implied warranty of merchantability is breached when "a defect .

17  . . render[s] the product unfit for its ordinary purpose." *Berenblat v. Apple, Inc.*, 2009 WL

18  2591366, at * 3 (N.D. Cal. Aug. 21, 2009).

19       **A.      *Apple Breached The Implied Warranty Of Merchantability By Manufacturing A***

20       ***Product With A Latent Defect That Existed At The Time Of Sale***

21       Apple appears to concede that its products were inherently defective at the time of

22  manufacture.  Apple simply argues that it should be excused from any liability because the terms

23  of its one-sided express warranty purport to disclaim the implied warranty of merchantability or

24  limit the implied warranty to one year after purchase.  Apple's reliance on its express warranty is

25  misplaced as a matter of fact and law.

26       For more than fifty years, California courts have held that the warranty of merchantability

27  applies "where the defect is a *latent* defect." *Moore v. Hubbard & Johnson Lumber Co.*, 149

28

CALDWELL.
LESLIE &
PROCTOR

1   Cal.App.2d 236, 240 (1957) (emphasis in original). This black-letter principle has been

2   consistently reiterated and reaffirmed by California appellate courts. *See, e.g., Mexia v. Rinker*

3   *Boat Co., Inc.,* 174 Cal.App.4th 1297, 1304 (2009), *review denied* (Aug. 26, 2009); *Brittalia*

4   *Ventures*, 153 Cal.App.4th at 24 ("Implied warranties extend to latent defects."); *Garlock*

5   *Technologies, LLC v. Nak Sealing Technologies Corp.*, 148 Cal.App.4th 937, 950 (2007)

6   (affirming judgment for breach of the warranty of merchantability on the basis of latent defects).

7           Indeed, California courts have long recognized that "[t]he implied warranty of

8   merchantability may be breached by a latent defect undiscoverable at the time of sale. . . . In the

9   case of a latent defect, a product is rendered unmerchantable, and the warranty of merchantability

10   is breached, *by the existence of the unseen defect*, not by its subsequent discovery." *Mexia*, 174

11   Cal.App.4th at 1304-05 (emphasis added) (internal citations omitted). "Thus, although a defect

12   may not be discovered for months or years after a sale, merchantability is evaluated as if the defect

13   were known." *Id.* Accordingly, the *Mexia* court resoundingly rejected the defendants' argument

14   that a latent defect must be discovered within one year of purchase in order to state a claim for

15   breach of the implied warranty of merchantability. *Id.*

16           Apple persists in confusing the concepts of express and implied warranties.[3] Indeed,

17   Apple ignores the long line of California cases holding that a product defect need not manifest

18   within one year to state a claim for breach of the implied warranty of merchantability. *See*

19   *Brittalia Ventures*, 153 Cal.App.4th at 28 (holding that the implied warranty of merchantability

20   applied to protect the purchaser of trees with a latent defect that manifested more than two years

21   after the purchase); *Hicks v. Kaufman and Broad Home Corp.*, 89 Cal.App.4th 908, 918 (2001)

22   ("proof of breach of warranty does not require proof the product has malfunctioned but only that it

23   contains an inherent defect which is substantially certain to result in malfunction during the useful

24   _____

25   [3] Apple relies heavily on an intermediate appellate court decision, *Daugherty v. American Honda
    Motors Co., Inc.*, 144 Cal.App.4th 824, 830 (2006), which holds that failure of a component part
26   outside the express warranty period cannot form the basis of an *express* warranty claim. However,
    the rationale of *Daugherty* applies only to *express* warranty claims. Indeed, the *Daugherty* court
27   emphasized that "Daugherty makes no implied warranty claims." *Id.* at 831. Accordingly, the
    *Daugherty* decision is inapplicable to this case.

28

CALDWELL,
LESLIE &
PROCTOR

-7-
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
(Case No. C-08-04969 JF (PVT) and Case No. C-09-01649 JF (PVT))

1  life of the product"); *Hewlett-Packard Co. v. Superior Court*, 167 Cal.App.4th 87, 96 (2008) ("an

2  actual malfunction of the notebook screens would not be necessary to establish defect, if it could

3  be established that the notebook screens were substantially certain to fail prematurely."). The

4  mere fact that the defect exists at the time of manufacture constitutes a breach of the implied

5  warranty – even if the defect does not manifest itself for months or years later. *Id.*

6          Here, Apple breached the implied warranty of merchantability because it sold to Plaintiffs

7  and members of the class computers with a latent defect that existed at the time the computers

8  were manufactured and rendered the computers substantially certain to malfunction within their

9  useful life. These allegations are more than sufficient to state a claim for breach of the implied

10  warranty of merchantability.

11          **B.    *Apple's Disclaimer Of Implied Warranties Is Ineffective***

12          Apple's express warranty cannot effectively limit the implied warranty because consumers

13  were unaware of the warranty's limitations until after their purchase.[4] In addition, Apple's

14  disclaimer and durational limitations are unconscionable because consumers were unable to

15  negotiate their terms and Apple knew of the defects yet deliberately sold the PowerBook G4

16  laptops without disclosing that the memory slots would likely fail within the product's expected

17  useful life.[5]

18          **1.    Apple Improperly Provided The Supposed Disclaimer After It**

19                  **Consummated A Sale To A Consumer**

20          To be effective, any limitation on implied warranties must be made available to consumers

21  ***prior*** to the sale of the product. 15 U.S.C. § 2308(c). Indeed, "[a] disclaimer of warranties must

22  be specifically bargained for, so that a disclaimer [in a warranty] given to the buyer *after* he signs

23  _____

24  [4] The validity of the limitations on implied warranties raises questions of fact that cannot be
25  resolved at this stage of the litigation. *See, e.g., Hughes Tool Co. v. Max Hinrichs Seed Co.*, 112
    Cal.App.3d 194, 202 (1980) (exclusion of implied warranties is a question of fact).

26  [5] Apple argues that certain Plaintiffs made warranty claims and cannot now challenge the
    enforceability of the warranty. However, Plaintiffs allege that Apple did not make good faith
27  warranty repairs.

28

CALDWELL,
LESLIE &
PROCTOR

-8-
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
(Case No. C-08-04969 JF (PVT) and Case No. C-09-01649 JF (PVT))

1   the contract is *not* binding." *Dorman v. International Harvester Co.*, 46 Cal.App.3d 11, 20 (1975)

2   (emphasis in original).  As the California Supreme Court explained in *Hauter v. Zogarts*:

> [A]ny disclaimer or modification [of implied warranties] must be
> strictly construed against the seller.  Although the parties are free to
> write their own contract, the consumer must be placed on fair notice
> of any disclaimer or modification of a warranty and must freely
> agree to the seller's terms.  A unilateral nonwarranty cannot be
> tacked onto a contract containing a warranty.

7   14 Cal.3d 104, 119-20 (1975) (internal citations and quotations omitted); *see also Bowdoin v.*

8   *Showell Growers, Inc.*, 817 F.2d 1543, 1545 (11th Cir. 1987) ("[i]f . . . the disclaimer was not

9   presented to the purchaser before the sale, the court will hold such a disclosure did not form a part

10   of the basis of the bargain"); *LWT, Inc. v. Childers*, 19 F.3d 539, 541 (10th Cir. 1994) (holding

11   that the question of effectiveness of a limited warranty "is ordinarily one of fact for the jury").

12       The SAC alleges that "Apple's purported limitation of warranties is provided to consumers

13   within the product packaging.  Thus, a consumer obtains a copy of the warranty only after they

14   purchase the product and open the packaging."  SAC ¶41.  Apple's post-sale delivery of the

15   warranty renders any limitations invalid.  Because Apple did not provide any information

16   concerning its unilateral limitation on warranties before consumers purchased a PowerBook G4

17   computer, Apple's disclaimer is ineffective.

18       **2.**    **Apple's Warranty Disclaimer And Durational Limits Are**

19          **Unconscionable**

20       Even if a limit on the duration of an implied warranty is allowed, that limit must be

21   "consciable."  15 U.S.C. § 2308(b).  California law provides that "[w]hen it is claimed or

22   appears to the court that the contract or any clause thereof may be unconscionable the parties shall

23   be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and

24   effect to aid the court in making the determination."  Cal. Civ. Code § 1670.5.  Indeed,

25   "[u]nconscionability is a flexible doctrine designed to allow courts to directly consider numerous

26

27

28

CALDWELL.
LESLIE &
PROCTOR

1  factors which may adulterate the contractual process." *A&M Produce v. FMC Corp.*, 135

2  Cal.App.3d 473, 484 (1982).[6]

3      Under California law, "both procedural and substantative unconscionability must be

4  present to justify the refusal to enforce a contract or clause based on unconscionability." *Olvera v.*

5  *El Pollo Loco Inc.*, 173 Cal.App.4th 447, 454 (2009) (citing *Armendariz v. Foundation Health*

6  *Psychcare Services, Inc.*, 24 Cal.4th 83, 113-14 (2000)). "Procedural unconscionability focuses

7  on oppression or unfair surprise, while substantive unconscionability focuses on overly harsh or

8  one-sided terms." *Id.* "A sliding scale is applied so that 'the more substantively oppressive the

9  contract term, the less evidence of procedural unconscionability is required to come to the

10  conclusion that the term is unenforceable, and vice versa.'" *Parada v. Superior Court*, 176

11  Cal.App.4th 1554, 1568 (2009) (quoting *Armendariz*, 24 Cal.4th at 114). Apple's attempt to limit

12  the duration of its implied warranties satisfies both the procedural and substantive elements of

13  unconscionability.

14          (a)    **The Limitation On Implied Warranties Is Procedurally**

15                  **Unconscionable**

16      Procedural unconscionability "focuses on factors of oppression and surprise." *Parada*, 176

17  Cal.App.4th at 1570. "The oppression component arises from an inequality of bargaining power

18  of the parties to the contract and an absence of real negotiation or a meaningful choice on the part

19  of the weaker party." *Id.* (internal quotations and citation omitted). "Procedural unconscionability

20  generally takes the form of a contract of adhesion, that is, a contract drafted by the party of

21  superior bargaining strength and imposed on the other without the opportunity to negotiate."

22  *Laster v. AT&T Mobility, Inc.*, 584 F.3d 849, 853 (9th Cir. 2009).

23

24

25  [6] If Apple's warranty limitations were made in bad faith, they are invalid. With respect to implied
warranties, the comments to the Uniform Commercial Code (as adopted by California) provide:

26  "[A seller's] knowledge of any defects not apparent on inspection would, however, without need
for express agreement and in keeping with the underlying reason of the present section and the

27  provisions on good faith, *impose an obligation that known material but hidden defects be fully
disclosed.*" Cal. Comm. Code § 2314, UCC Comment 3 (emphasis added).

28

CALDWELL,
LESLIE &
PROCTOR

-10-
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
(Case No. C-08-04969 JF (PVT) and Case No. C-09-01649 JF (PVT))

1    Indeed, the "California Court of Appeal has held that '[a] finding of a contract of adhesion

2    is essentially a finding of procedural unconscionability.'" *Nagrampa v. MailCoups, Inc.*, 469 F.3d

3    1257, 1281 (9th Cir. 2006) (quoting *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal.App.4th 846,

4    853 (2001); *see also Aral v. EarthLink, Inc.,* 134 Cal. App.4th 544, 557 (2005); (finding

5    "quintessential procedural unconscionability" where "the terms of the agreement were presented

6    on a 'take it or leave it' basis ... with no opportunity to opt out").

7    Apple's supposed limitation on implied warranties bears all the hallmarks of a contract of

8    adhesion. First, as discussed above, Apple drafted the warranty limitation and provided it to

9    consumers only after a sale. SAC ¶41. Moreover, the terms of Apple's warranty expressly

10    prohibited any negotiation over the terms of the limitation of the implied warranties, stating "No

11    Apple reseller, agent, or employee is authorized to make any modification, extension or addition

12    to this warranty." SAC ¶42. Thus, the limitation on warranties is a classic "take it or leave it"

13    contract of adhesion. *See Laster*, 584 F.3d at 854-55 (finding a standardized contract to be a

14    contract of adhesion where consumers had no opportunity to negotiate the terms). Accordingly,

15    the element of procedural unconscionability weighs heavily in favor of invalidating the limitation

16    on implied warranties.

17                    **(b)        The Limitation On Implied Warranties Is Substantively**

18                                  **Unconscionable**

19    Substantive unconscionability "focuses on overly harsh or one-sided contract terms."

20    *Laster*, 584 F.3d at 853. Courts have not hesitated to find limitations on warranties substantively

21    unconscionable when a manufacturer knows of a latent defect at the time of sale. *See, e.g.,*

22    *Bussian v. DaimlerChrysler Corp.*, 411 F.Supp.2d 614, 622 (M.D.N.C. 2006); *Cooper v. Samsung*

23    *Electronics America, Inc.*, 2008 WL 4513924, at *3 (D.N.J. Sept. 30, 2008) (denying motion to

24    dismiss where complaint alleged that defendant's knowledge of inherent product defects resulted

25    in limited warranty unenforceable as unconscionable).

26    For example, in *Carlson v. General Motors Corporation*, 883 F.2d 287, 293 (4th Cir.

27    1989), plaintiffs experienced problems with their vehicles after the expiration of the express

28

CALDWELL,
LESLIE &
PROCTOR

-11-
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
(Case No. C-08-04969 JF (PVT) and Case No. C-09-01649 JF (PVT))

1  warranties.  Reversing the district court's holding on a motion to dismiss that the limits on implied

2  warranties were coextensive with the express warranties, the court explained:

3          We . . . hold that the district court erred by ruling, solely on the basis
        of the pleadings, that GM's durational limitations on any and all
4          implied warranties were both 'reasonable' and 'conscionable' as a
        matter of law.  The court will be equipped to address that question
5          only *after* plaintiffs have had an opportunity – whether in
        connection with a motion for summary judgment or at trial – to
6          present evidence that, for example, they had no 'meaningful choice'
        but to accept the limited warranties, or that the durational limitations
7          'unreasonably' favored the defendant.

8  *Id.* (emphasis in original); *see also Payne v. Fujifilm U.S.A, Inc.*, 2007 WL 4591281, at *5 (D.N.J.

9  Dec. 28, 2007) (denying motion to dismiss because complaint sufficiently alleged that the

10 durational limits on warranties were unconscionable); *Lennar Homes, Inc. v. Masonite Corp.*, 32

11 F.Supp.2d 396, 401 (E.D.La. 1998) ("shipping a product with a known latent defect may infect a

12 limitation with unconscionability").

13         Here, the SAC alleges that Apple was aware that its PowerBooks were defective, yet

14 continued to sell them regardless.  SAC ¶43.  Indeed, Apple deliberately concealed the growing

15 number of complaints about the PowerBook G4 memory slots by deleting a discussion thread

16 containing over 350 posts concerning the PowerBook memory slot defect from its website.  SAC

17 ¶32.  All the while, Apple planned to discontinue the PowerBook brand as it secretly partnered

18 with Intel to make the next generation of Apple laptop computers – the MacBook Pro.  SAC ¶¶

19 34-38.  Thus, Apple was in a position to know what consumers did not – that they were spending

20 over a thousand dollars for a product that was likely to fail during what should be its useful life.

21 Despite Apple's knowledge of the defect in the memory slots, it did not adequately advise

22 consumers of the defect and obtain their consent to the purchase of a defective product.  SAC ¶87.

23 Consumers had no opportunity to bargain with Apple over the terms of their PowerBook purchase.

24 SAC ¶42.  These allegations are sufficient to establish that any durational limit on implied

25 warranties is unconscionable and violates basic principles of good faith.  Accordingly, Plaintiff is

26 entitled to discovery concerning whether any purported limitation on the duration of implied

27 warranties is unconscionable or made in bad faith and, therefore, void.

28

CALDWELL,
LESLIE &
PROCTOR

III.   **THE SECOND AMENDED COMPLAINT STATES A CLAIM UNDER CALIFORNIA'S UNFAIR COMPETITION LAW**

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice. . . ." Cal. Bus. & Prof. Code § 17200. "The scope of the UCL is quite broad." *McKell v. Washington Mut., Inc.*, 142 Cal. App.4th 1457, 1471 (2006); *see also Kasky v. Nike, Inc.*, 27 Cal.4th 939, 949 (2002) ("The UCL's scope is broad"). "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition – acts or practice that are unlawful, or unfair, or fraudulent." *AICCO, Inc. v. Ins. Co. of N. Am.*, 90 Cal.App.4th 579, 587 (2001). Plaintiffs' allegation that Apple knowingly sold defective computers to consumers sufficiently pleads a violation of the UCL as unlawful, unfair, and fraudulent business practices. SAC ¶¶84-89.

   **A.   *Apple's Knowing Sale of a Defective Product Is Unlawful***

As described above, Apple's actions in selling a product with a known defect violate the California Commercial Code and thus are unlawful. With respect to the unlawful prong of the UCL, courts have recognized that "[t]he UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law." *Plascencia v. Lending 1st Mortgage*, 583 F.Supp.2d 1090, 1098 (N.D. Cal. 2008). "Violation of almost any federal, state or local law may serve as the basis for a UCL claim." *Id*; *see also AICCO*, 90 Cal.App.4th at 587. Here, the SAC asserts that Apple violated California Commercial Code § 2314 and was unjustly enriched by selling computers with defective memory slots. SAC ¶ 86. These predicate violations are sufficient to state a claim under the UCL. *See Chamberlain v. Ford Motor Co.*, 369 F.Supp.2d 1138, 1147 (N.D. Cal. 2005).

   **B.   *Plaintiffs Sufficiently Plead A UCL Claim Under The "Fraudulent Practices" Prong In Accordance With Rule 9(b)***

      **1.   Apple Committed A Fraudulent Business Practice**

Under the UCL, "a fraudulent business practice is one that is likely to deceive members of the public." *Morgan v. AT&T Wireless Services, Inc.*, 177 Cal.App.4th 1235, 1255 (2009). Thus,

CALDWELL,
LESLIE &
PROCTOR

1   "a claim based upon the fraudulent business practice prong of the UCL is distinct from common

2   law fraud." *Id.*

3        In *Morgan*, the plaintiffs alleged that AT&T committed a fraudulent business practice in

4   violation of the UCL where AT&T sold particular phones with the knowledge that its network

5   would not support the phone's functionality for the useful life of the device. *Id.* at 1256.  The trial

6   court sustained AT&T's demurrer concluding that a consumer could only expect a phone to

7   function during the duration of the product's warranty. *Id.* at 1257.  The California Court of

8   Appeal reversed.  In reversing the trial court's holding, the appellate court noted that "[t]he

9   determination as to whether a business practice is deceptive is based on the likely effect such a

10  practice would have on a reasonable consumer." *Id.* at 1256-57 (internal quotation omitted).

11  "Unless we can say as a matter of law that contrary to the complaint's allegations, members of the

12  public were ***not*** likely to be deceived or mislead by [AT&T's alleged conduct], we must hold that

13  [plaintiffs] stated a cause of action." *Id.* (internal quotation omitted) (alterations and emphasis in

14  original).  The appellate court held that the plaintiffs stated a cause of action under the UCL

15  because it could not find as a matter of law that consumers would not be deceived by AT&T's

16  conduct. *Id.*

17       Similarly here, the SAC alleges that Apple knew of a defect that would cause its

18  PowerBook computers to malfunction during the expected useful life of the product. *See, e.g.*,

19  SAC ¶ 87.  Apple ignored the defect because it secretly planned to discontinue the PowerBook

20  brand.  SAC ¶36.  Consumers clearly would not have spent over one thousand dollars on a

21  computer if they had known that the product was likely to malfunction during what should be its

22  useful life.  Accordingly, the SAC sufficiently alleges that Apple committed a fraudulent business

23  practice in violation of the UCL. *See, e.g., Berenblat v. Apple, Inc.*, CV-08-5788, Transcript of

24  Proceedings at 28 (August. 14, 2009) ("If you are selling a bad product, you know it's a bad

25  product, it may never get to the end of the representation you are making; and nonetheless, you put

26  it on the market and say well, I will take my chances.  At some point, it seems to me, that mental

27  state could subject someone to liability.").

28

CALDWELL.
LESLIE &
PROCTOR

1

**2.     The Second Amended Complaint Meets The Standards Of Rule 9(b)**

2      Apple claims that the SAC's allegations do not satisfy the threshold of Federal Rule of

3  Civil Procedure 9(b).[7]  The purpose of Rule 9(b)'s requirement to plead with particularity is to

4  apprise each defendant of the nature of the claim and the acts or statements or failures to disclose

5  relied upon by the plaintiff as constituting the fraud being charged against each of them.  *Cooper*

6  *v. Pickett*, 137 F.3d 616, 626 (9th Cir. 1997).  A complaint need not give the specific details of

7  every transaction, but simply must identify the circumstances of the alleged fraud so that the

8  defendants can prepare an adequate answer.  *Id.*; *see also SEC v. Yuen*, 221 F.R.D. 631, 634 (C.D.

9  Cal. 2004) (pleading sufficient if it identifies circumstances of alleged fraud so defendant can

10  prepare adequate answer).  "A court should hesitate to dismiss a complaint under Rule 9(b) if the

11  court is satisfied (1) that the defendant has been made aware of the particular circumstance for

12  which she will have to prepare a defense at trial, and (2) that plaintiff has substantial pre-discovery

13  knowledge of those facts."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th

14  Cir. 1999).

15      Apple does not actually assert it lacks information upon which to proceed.  Nor could

16  Apple make such an argument.  Indeed, Plaintiffs allege a fraudulent course of conduct including

17  active concealment and nondisclosure of material information about the memory slot defect.  In

18  omissions cases where the plaintiff is unable to specify the time and place because no act

19  occurred, to comply with Federal Rule of Civil Procedure's special pleading requirement for

20  fraud, the complaint must merely allege: (1) what the omissions were; (2) the person responsible

21  for the failure to disclose; (3) the context of the omissions and the manner in which they misled

22  the plaintiff; and (4) what the defendant obtained through the fraud.  *Watts v. Jackson Hewitt Tax*

23  *Service Inc.*, 579 F.Supp.2d 334, 350 (E.D.N.Y. 2008).

24      Here, Plaintiffs allege the following:

25

26

---

27  [7] Rule 9(b) states that in "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

28

CALDWELL,
LESLIE &
PROCTOR

-15-
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
(Case No. C-08-04969 JF (PVT) and Case No. C-09-01649 JF (PVT))

1    •   Apple manufactured PowerBooks with two memory slots for expanded RAM, and

2        RAM expansion affects price. SAC ¶24, 25. Apple's packaging, technical

3        specifications and manuals specified an expansion for "future memory upgrades"

4        totaling 2GB of RAM. *Id.* at ¶26.

5    •   As early as November 2004, email threads appeared discussing the memory slot

6        problem, and consumer interactions with Apple regarding a memory slot defect.

7        Apple was misinforming users that "only the 15 inch PB's" (sic) had the problem.

8        *Id.* at ¶31. By May 2005, more Apple costumers had complained about memory

9        slot defects on Apple's own website, and one customer even noted that "apple has

10       removed a 350+ post thread concerning this issue." *Id.* at ¶32. Over 5,000

11       PowerBook customers have complained about the memory slot defect and posted

12       their complaints in an online petition that Apple has ignored; Plaintiffs excerpted

13       some of the complaints, which include the date of the posting. *Id.* at ¶33.

14   •   Apple partnered with Intel and retired the PowerBook brand amid the extensive

15       problems it experienced. *Id.* at ¶¶34-38.

16   •   Apple belatedly conceded the existence of the RAM slot defect but offered only a

17       limited warranty extension program. However, Apple did not contact purchasers

18       about the program, even those who brought in their PowerBooks for other repairs.

19       *Id.* at ¶¶ 8, 29, 44-48, 67.

20   •   Plaintiffs suffered damage as a result of Apple's non-disclosures. *Id.* at ¶¶51, 56,

21       60, 65, 71, 75, 90.

22   Plaintiffs' allegations specify who withheld information (Apple), what information Apple

23   withheld (the extent of the memory slot defect), the context of the omissions (RAM expansion was

24   material, and something a consumer might not notice until after purchase); and the extent and how

25   purchasers were harmed (limited memory capacity and reduced performance).

26       The SAC's allegations sufficiently apprise Apple of the conduct underlying Plaintiffs'

27   UCL claim. As such, the SAC meets the requirements of Rule 9(b). *Accord Harper v. LG*

28

CALDWELL,
LESLIE &
PROCTOR

-16-
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
(Case No. C-08-04969 JF (PVT) and Case No. C-09-01649 JF (PVT))

1   *Electronics USA, Inc.*, 595 F.Supp.2d 486 (D.N.J.2009) (holding consumers pled fraud with

2   sufficient particularity by alleging that manufacturer marketed defective products as providing

3   superior quality, and knowingly failed to disclose alleged design defects in an attempt to sell more

4   washing machines); *Gonzalez v. Pepsico, Inc.*, 489 F.Supp.2d 1233 (D. Kan. 2007) (claim that

5   beverage manufacturers committed unfair trade practices was pled with sufficient particularly

6   where allegations included time frame of conduct, place of alleged fraudulent conduct, and

7   substance of alleged conduct, i.e. willfully failing to disclose to consumers potential presence of

8   benzene in beverage products).

9        In support of their motion to dismiss Plaintiffs' UCL claims under Rule 9(b), Apple relies

10  on *Hovsepian v. Apple, Inc.*, 2009 WL 2591445 (N.D. Cal., Aug. 21, 2009), and *Tietsworth v.*

11  *Sears Roebuck & Co.*, 2009 WL 3320486 (N.D. Cal., Oct. 13, 2009).  *See* Def. Mem. at 13-15.

12  These cases, however, are distinguishable.  In *Hovsepian*, this Court found that generalized

13  allegations with respect to consumer expectations that "[m]any current studies suggest that an

14  average LCD screen should last at least 5 years of normal usage without significant screen

15  degradation" and that "Apple 'knew' that the screens would fail at some point, were not sufficient

16  to establish CLRA claims of material omissions."  2009 WL 2591445 at *4; *see also Tietsworth*,

17  2009 WL 3320486 at *7 (explaining that the plaintiffs failed to allege any factual support beyond

18  a conclusory statement that "at all relevant times, Defendants had exclusive possession and control

19  of all facts necessary to know that the Machines' Electronic Boards were defective.").  Here,

20  Plaintiffs provided pre-discovery information that related conversations with Apple personnel

21  before Apple publicly acknowledged any memory slot defect, and Apple's attempt to actively

22  conceal the breadth of the defect by specifically removing posts from their websites that included

23  mention of the defect.  SAC at ¶¶31-32.  Thus, Plaintiffs have provided the detail necessary under

24  Rule 9(b).[8]

25

26  _____

27  [8] Apple's reliance on *Oestreicher v. Alienware Corp.*, 544 F.Supp.2d 964 (N.D. Cal. 2008), is also
    misplaced.  In *Oestreicher*, the court found the complaint insufficiently pled a fraud claim when it

28  failed to allege "any factual basis" that Alienware concealed a material fact - a design defect – and
    (footnote continued)

CALDWELL,
LESLIE &
PROCTOR

-17-
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
(Case No. C-08-04969 JF (PVT) and Case No. C-09-01649 JF (PVT))

1    **C.      Apple's Manufacture and Sale of Defective PowerBooks Constitutes An  Unfair**

2    **Business Practice In Violation of the UCL**

3    **1.      Apple "Unfairly" Injured Consumers**

4    "A business practice is unfair within the meaning of the UCL if it violates established

5    public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to

6    consumers which outweighs its benefits." *McKell*, 142 Cal.App.4th at 1473.  As the California

7    Supreme Court has explained, "[b]y defining unfair competition to include also any '*unfair or*

8    *fraudulent* business act or practice,' the UCL sweeps within its scope acts and practices not

9    specifically proscribed by any other law." *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950 (2002)

10   (quoting Cal. Bus. & Prof. Code § 17200) (emphasis in original); *see also Lozano v. AT&T*

11   *Wireless Serv., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) ("Each prong of the UCL is a separate and

12   distinct theory of liability; thus, the 'unfair' practices prong offers an independent basis for

13   relief.").

14        The California courts have made clear that "the determination of whether [a business act or

15   practice] is unfair is one of fact which requires a review of the evidence from both parties. . . .  It

16   thus cannot usually be made on demurrer." *McKell*, 142 Cal.App.4th at 1473.  Indeed,

17   "'unfairness' is an equitable concept that cannot be mechanistically determined under the

18   relatively rigid legal rules applicable to the sustaining or overruling of a demurrer." *Schnall v. The*

19   *Hertz Corp.*, 78 Cal.App.4th 1144, 1167 (2000).  In reversing a district court decision granting a

20   motion to dismiss a UCL claim, the Ninth Circuit recently stated that "whether a business practice

21   is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams*

22   *v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008).

23   _____

24   relied upon internet postings about the defects. *Id.*  Unlike Oestreicher, Plaintiffs here included
     date-specific internet postings dating back to November 2004 wherein a customer related his

25   interaction with Apple, and that he was told the memory slot defect was limited to the 15" models.
     SAC ¶31.  The SAC also cites a May 2005 post on Apple's website in estimating the deletion of

26   "350+" earlier comments by PowerBook customers regarding the memory slot defect. *Id.* at ¶32.
     Plaintiffs all bought their PowerBooks in 2005 or later. *Id.* at ¶¶49, 53, 57, 61, 66, 72.  Thus,

27   Plaintiffs do provide specific allegations regarding what Apple knew about the memory slot defect
     prior to Plaintiffs' purchases, therefore adequately alleging a fraudulent practice.

28

CALDWELL.
LESLIE &
PROCTOR

-18-
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
(Case No. C-08-04969 JF (PVT) and Case No. C-09-01649 JF (PVT))

1  **2.     Plaintiffs' UCL Claim Under the "Unfairness Prong" Is Not Subject To**

2  **The Heightened Pleading Standard Of Rule 9(b)**

3  Not all UCL claims fall within the purview of Federal Rule of Civil Procedure 9(b).  *Gruen*

4  *v. EdFund*, 2009 WL 2136785, at *5 (N.D. Cal. July 15, 2009).  Thus, while Plaintiffs have

5  satisfied the requirements of Rule 9(b), allegations of an "unfair" business practice need not meet

6  the heightened pleading standard.  *See Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1104 (9th Cir.

7  2002).

8  The Ninth Circuit's decision in *Vess*, a case cited by Apple, confirms that the SAC

9  adequately alleges an unfair business practice.  In *Vess*, the plaintiff alleged a conspiracy between

10 a drug company and various other associations to invent ADHD and expand the market for the

11 drug Ritalin.  *Id*. at 1101.  The district court dismissed the UCL claims, finding they did not meet

12 the heightened pleading requirements of Rule 9(b).  On appeal, the Ninth Circuit isolated the

13 allegations that did not allege fraud, and were not subject to Rule 9(b)'s requirements.  The Ninth

14 Circuit noted "Vess neither mentions the word "fraud," nor alleges facts that would necessarily

15 constitute fraud," when he alleged that " Novartis … (2) took steps to increase the sales of Ritalin

16 in various ways; (3) failed to warn consumers that the full range of Ritalin's side effects has not

17 yet been adequately studied; (4) failed to disclose the limited effectiveness of its product; and (5)

18 failed to disclose that the clinical literature on ADD/ADHD referred to in the DSM is of poor

19 quality."  *Id*. at 1106.  The Ninth Circuit reversed the district court's dismissal of the entirety of

20 Vess's complaint against Novartis for failure to satisfy Rule 9(b).  *Id.*

21 Similarly, here, Plaintiffs' UCL claims include not only "fraudulent practices" but also

22 "unlawful and unfair" practices.  Specifically, the SAC alleges that Apple acted unlawfully and

23 unfairly when it "failed to exercise reasonable care to test the memory slots" prior to sale, and

24 continued to sell the machines after knowledge of the design defect.  SAC ¶86.  The SAC also

25 alleges that despite knowing that the memory slots would likely fail within the useful life span of

26 the PowerBooks, Apple continued to sell the machines, and refused to repair or replace them.

27 SAC ¶87.  This claim does not sound in fraud and would not be subject to Rule 9(b).  *Vess*, 317

28

CALDWELL,
LESLIE &
PROCTOR

-19-
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
(Case No. C-08-04969 JF (PVT) and Case No. C-09-01649 JF (PVT))

1    F3d at 1106; *see also In re Mattel, Inc.*, 588 F.Supp.2d 1111 (C.D. Cal. 2008) (holding that Rule

2    9(b) did not apply to allegations that manufacturers' and retailers' representations concerning

3    quality and safety of toys were likely to deceive consumers).

4    **IV.    THE SECOND AMENDED COMPLAINT ALLEGES A CAUSE OF ACTION FOR**

5    **UNJUST ENRICHMENT**

6            To recover for unjust enrichment, a complaint must allege "receipt of a benefit and unjust

7    retention of the benefit at the expense of another." *Lectrodryer v. Seoulbank*, 77 Cal.App.4th 723,

8    726 (2000); *see also Ghirardo v. Antonioli*, 14 Cal.4th 39, 51 (1996); *Hirsch v. Bank of America,*

9    *N.A.*, 107 Cal.App.4th 708, 722 (2003).  A claim for unjust enrichment is synonymous with

10   restitution. *First Nationwide Savings v. Perry*, 11 Cal.App.4th 1657, 1662 (Cal. Ct. App. 1992).

11   Whether or not a plaintiff is entitled to recover on a theory of unjust enrichment requires a

12   determination of policy considerations and the knowledge of the alleged wrongdoer. *Id.*

13           Here, the SAC alleges that Apple manufactured a computer with defective memory slots.

14   SAC ¶ 27.  Despite its awareness of this defect, Apple refused to correct it for the vast majority of

15   consumers. SAC ¶¶ 27, 39, 43.  Plaintiffs and other members of the class expended substantial

16   sums for a computer that Apple touted as having features such as two memory slots.  SAC ¶¶24-

17   26.  Indeed, to correct the defect on their own, consumers would have to pay almost one-half of

18   the purchase price of the computer.  SAC ¶ 1.  Under these circumstances, it would be unjust for

19   Apple to retain the enormous profits it received based on sales of computers that do not operate as

20   intended.  Thus, Plaintiffs have stated a cause of action for unjust enrichment.

21

22

23

24

25

26

27

28

CALDWELL,
LESLIE &
PROCTOR

1

## CONCLUSION

2          For the foregoing reasons, the Court should deny Apple's motion to dismiss in its entirety

3   and should grant such other and further relief as it deems proper.

4   DATED: December 21, 2009                    Respectfully submitted,

5                                               CALDWELL LESLIE & PROCTOR, PC
                                                ROBYN C. CROWTHER
6                                               ERIC S. PETTIT

7

8
                                                By _____/S/_____
9                                                       ROBYN C. CROWTHER
                                                Attorneys for Plaintiffs and all others similarly situated
10

11                                              **MEISELMAN, DENLEA, PACKMAN,**
                                                **CARTON & EBERZ P.C.**
12                                              Jeffrey I. Carton (*pro hac vice*)
                                                Jerome Noll (*pro hac vice*)
13                                              Christine M. Ford (*pro hac vice*)
                                                1311 Mamaroneck Avenue
14                                              White Plains, New York 10605
                                                (914) 517-5000
15

16                                              **GIRARD GIBBS LLP**
                                                Eric H. Gibbs
17                                              Geoffrey A. Munroe
                                                601 California Street, Suite 1400
18                                              San Francisco, CA  94108
                                                Telephone:    (415) 981-4800
19                                              Facsimile:    (415) 981-4846

20                                              **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                                Andrew N. Friedman (*pro hac vice* application pending)
21                                              Douglas J. McNamara (*pro hac vice* application
                                                pending)
22                                              1100 New York Ave., NW
                                                West Tower, Suite 500
23                                              Washington, DC  20005-3964
                                                Telephone:    (202) 408-4600
24                                              Facsimile:    (202) 408-4699

25                                              Attorneys for Plaintiffs

26

27

28

CALDWELL,
LESLIE &
PROCTOR