1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 4/9/2010**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| RUEBEN BERENBLAT, ANDREW PERSONETTE, EARL. C. SIMPSON, and LAURA MILLER,<br><br>          Plaintiffs,<br><br>      v.<br><br>APPLE, INC.,<br><br>          Defendant. | Case Number 08-4969 JF (PVT)<br>Case Number 09-1649 JF (PVT)<br><br>ORDER[1] GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART<br><br>[re: docket nos. 58; 41] |
| THOMAS WAGNER, SCOTT MEYERS,<br><br>          Plaintiff,<br><br>      v.<br><br>APPLE, INC.,<br><br>          Defendant. | |

     Plaintiffs Reuben Berenblat, Andrew Personette, Earl C. Simpson, Laura Miller, Thomas Wagner, and Scott Meyer bring the instant putative class actions on behalf of all original

---

[1] This disposition is not designated for publication in the official reports.

purchasers of PowerBook G4 portable computers from Defendant Apple, Inc. ("Apple") between January 1, 2005 and the present.  Plaintiffs initially filed two separate suits against Apple in October 2008 and April 2009.  The Berenblat Plaintiffs amended their initial complaint and filed a First Amended Complaint ("FAC") on April 2, 2009.  The Wagner Plaintiffs filed their initial complaint on April 15, 2009, and the Court related the two actions on April 30, 2009.  On July 1, 2009, Apple moved to dismiss the claims in both suits.  In an order dated August 21, 2009 ("August 21 Order"), the Court granted Apple's motion to dismiss with leave to amend.  Plaintiffs jointly filed the operative Second Amended Complaint ("SAC") on September 21, 2009, alleging three claims for relief: (1) unlawful, unfair, and fraudulent business practices in violation of the California Unfair Competition Law ("UCL"); (2) breach of the implied warranty of merchantability pursuant to California Commercial Code § 2314; and (3) unjust enrichment.  Apple moves to dismiss the claims in the SAC for failure to state a claim upon which relief may be granted.  The Court has considered the parties' briefs and oral argument presented at the hearing on February 5, 2010.  For the reasons set forth below, the motion will be granted, with leave to amend in part.

## I.  BACKGROUND

Apple designs, manufactures, and sells personal computers, including the PowerBook G4. SAC ¶¶ 19, 23.  At all relevant times, the PowerBook G4 computers were sold with a standard one-year limited express warranty, which limits the duration of any implied warranties to the duration of the express warranty.  *Id*. ¶ 25; Klestoff Decl. Ex. A at 2.  Apple's Aluminum PowerBook G4 computers were marketed in part for their ability to accommodate expanded random access memory (RAM) via two memory slots.  SAC ¶¶ 24-25.  Apple represented to purchasers that the computer could support up to a total of 2GB of additional RAM.  *Id*. ¶ 26.

Berenblat, a New York resident, purchased a PowerBook G4 on July 12, 2005.  *Id.* ¶¶ 11, 49.  He alleges that in September 2008, he added memory to his computer, and when its performance worsened, he took the computer to an Apple store.  He was told that there was a problem with the hard drive, but he later learned that "the lower memory slot was defective and degraded his computer's performance."  *Id*. at ¶¶ 50, 51.  Personette, who also is a New York

2

1   resident, purchased a PowerBook G4 in 2005.  Two years later, he determined that "the computer

2   did not recognize one of the memory cards because the lower memory slot was defective."  *Id*. ¶¶

3   12, 54.  Simpson, a Washington resident, purchased a PowerBook G4 on August 20, 2005.  *Id*. ¶¶

4   13, 57.  He alleges that on October 12, 2008 "he realized that the lower memory slot was

5   defective and did not recognize the memory."  *Id*. ¶ 58.

6   Miller, a California resident, purchased a PowerBook G4 in early 2006.  *Id*. ¶¶ 14, 61.

7   She subsequently purchased an AppleCare Protection Program, an extended service agreement

8   that provided her with repair coverage for an additional two years beyond the term of the express

9   warranty.  *Id*. ¶ 63; Klestoff Decl. Ex. B.  She alleges that "just after expiration of her AppleCare

10  extended protection" and approximately three years after she purchased her PowerBook G4, she

11  learned that "the lower memory slot of her PowerBook G4 was defective and did not recognize

12  the memory she attempted to load into the computer."  SAC ¶ 64.

13  Wagner, a resident of North Carolina, purchased his PowerBook G4 in the summer of

14  2005, along with three years of Apple Care extended warranty coverage.  *Id*. ¶¶15, 66.  Wagner

15  alleges that in March 2006, he purchased two 1GB memory expansion cards from the Apple

16  Store, and although his computer appeared sluggish, he was not alerted by Apple about the

17  memory slot defect.  *Id*. ¶ 67.  In January 2009, Wagner discovered that his computer was not

18  recognizing the lower RAM slot; he does not know how long this had been the case.  *Id*. ¶ 68.

19  Wagner alleges that Apple Care suggested the problem was the memory card.  *Id*. ¶ 69.  Had

20  Wagner known earlier of the memory slot problem, his machine (based on its serial number)

21  would have been eligible for Apple's Memory Slot Repair Program, which ended in July 2008.

22  *Id*.

23  Meyer, a South Dakota resident, purchased his PowerBook G4 and an Apple Care

24  extended warranty in June 2005.  *Id*. ¶¶ 16, 72.  After technicians at two Apple Stores allegedly

25  failed to diagnose why his machine was running slowly, he purchased an additional 1GB RAM

26  card in December 2008.  *Id.* ¶ 73.  Meyer alleges that when he tried to install the new RAM, he

27  discovered that a RAM card already was in the lower memory slot and was not recognized by the

28  computer.  *Id*.  Although he has two 1 GB RAM cards, Meyer alleges that he is able to use only

3

one of them. *Id.*

Plaintiffs allege that Apple knew that certain PowerBook G4 computers were manufactured with a single or double defective memory slot and attempted to conceal information about this defect. *Id.* ¶¶ 27, 28, 32. In response to consumer complaints, Apple extended the warranty for some PowerBook G4 customers through its PowerBook G4 Memory Slot Repair Extension Program. *Id.* ¶ 44. Apple otherwise has refused to warrant, repair or pay for any repairs relating to the PowerBook's defective lower memory slot. *Id.* ¶ 47.

## II. LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief may be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1997). However, the Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). *See also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)*; N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). However, under the "incorporation by reference" doctrine, the Court also may consider documents which are referenced extensively in the complaint and which are accepted by all parties as authentic. *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir.1999). Leave to amend should be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F. 3d 245, 248 (9th Cir. 1995).

In assessing whether to grant Plaintiffs another opportunity to amend, the Court considers "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party[,] and futility of the

Case Nos. 08-4969 & 09-1649
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART
(JFEX2)

1    proposed amendment." *Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001)

2    (quoting *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989)).  When

3    amendment would be futile, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d

4    386, 393 (9th Cir. 1996).

5                              **III. DISCUSSION**

6            Apple moves to dismiss the SAC without leave to amend, arguing that the additional facts

7    alleged by Plaintiffs are not materially different from those found insufficient in the August 21

8    Order.  Plaintiffs claim that their additional factual allegations show that prior to purchase

9    consumers did not have notice of or negotiating power with respect to the limitations of the

10   express warranty, and that Apple knew of the latent defect at the time of sale and did not disclose

11   that information to consumers.  Plaintiffs contend that Apple's disclaimer of implied warranties

12   is ineffective and unconscionable, both procedurally and substantively, and that Apple's business

13   practices are unfair, unlawful, and fraudulent under the UCL.  Because Apple benefitted from

14   Plaintiffs' purchases of allegedly defective computers, Plaintiffs also allege that Apple unjustly

15   enriched itself at their expense.

16       **1. Breach of Implied Warranty of Merchantability**

17           As explained in the August 21 Order, Plaintiffs are bound by the limitations in Apple's

18   express warranty unless they can allege facts that would create an exception to it.[2]  Aug. 21 Order

19   7:16-18 ( "[T]he limitation on the implied warranty appears to comply with the requirements of

20   Cal. Com. Code § 2316, and the Berenblat FAC is devoid of factual allegations that would

21   support an exception to an otherwise binding contractual agreement.").  Plaintiffs claim that they

22

23           [2] There is some disagreement among the California appellate courts as to whether the duration of
24   the implied warranty of merchantability, limited to one year under § 1791.1 of the Song-Beverly
     Consumer Warranty Act, applies to latent defects. Compare *Mexia v. Rinker Boat Co., Inc.*, 174 Cal.
25   App. 4th 1297 (2009) (§ 1791.1 does not bar an action for breach of implied warranty based upon a latent
     defect discovered by the purchaser more than one year after the sale) to *Larsen v. Nissan N. Am.*, No.
26   A121838, 2009 WL 1766797, at *5 (Cal. Ct. App. 1st Dist. June 23, 2009) (unpublished) ("the warranty
     of merchantability implied as a matter of law in California is limited to one year after purchase").
27   However, even if the *implied* warranty of merchantability is breached by the very existence of a latent
     defect at the time of sale, *see Mexia* at 1304-05, the limitations imposed by Apple's *express* warranty still
28   would apply.

                                      5

1   are entitled to such an exception on both procedural and substantive grounds.

2            A. Notice

3        Plaintiffs first contend that any limitation on or disclaimer of implied warranties must be

4   made available to the consumer prior to the sale of the product.  *See, e.g.*, *Dorman v. Int'l*

5   *Harvester Co.*, 46 Cal. App. 3d 11, 19-20 (1975) (holding that a limitation of warranties given in

6   writing by the seller to the buyer after the time of sale is not binding).  The SAC alleges that

7   consumers first receive Apple's express warranty disclosure in the product packaging, and thus

8   "obtain[] a copy of the warranty only after they purchase the product and open the packaging."

9   SAC ¶¶ 41, 97.  The named Plaintiffs do not allege, however, that they themselves did not

10  receive pre-sale notice of the warranty, or that they could not or did not access the warranty

11  online or at the Apple Store.  Also absent from the SAC is any allegation that the limitation of

12  implied warranty disclaimer is placed in an obscure location within the product packaging, or

13  that the section of the express warranty addressing the limitation is not prominently displayed.

14       The fact that Apple provides a copy of the warranty limitations in its product packaging,

15  rather than on the exterior of the box, may have the practical effect that some customers do not

16  receive pre-sale notice.  However, that fact alone is insufficient to undo the binding terms of the

17  warranty.  Section 2316 of the California Commercial Code requires that language excluding or

18  limiting the implied warranty of merchantability "mention merchantibility" and "be

19  conspicuous."  Section 2308 of the Magnuson-Moss Warranty Act requires that limitations on

20  implied warranties be "limited in duration to the duration of a written warranty of reasonable

21  duration," and that the limitation be "conscionable"and "set forth in clear and unmistakable

22  language and prominently displayed on the face of the warranty." 15 U.S.C. § 2308(b).  Plaintiffs

23  do not allege that the exclusionary language in Apple's express warranty is inconspicuous or is

24  not prominently displayed on the face of the warranty, or that it imposes a limitation of

25  unreasonable duration.

26       Plaintiffs cite a number of cases in which post-sale notice of a warranty limitation was

27  held to render the limitation unenforceable.  None of these cases involves facts similar those at

28  issue here.  For example, in *Dorman v. Int'l Harvester Co.*, 46 Cal. App. 3d 11, 20 (1975), the

6

1  court held that the limitation on warranties in a sales contract for a tractor and backhoe had to be

2  bargained for specifically rather than located on the reverse side of a purchase order that may

3  never have been seen by the purchaser.  *Dorman* dealt with a sales contract containing a warranty

4  disclaimer that was "not in bold face type"and "not sufficiently conspicuous," and in which the

5  purchaser was not even given a separate copy of the manufacturer's warranty.  *Id.* at 18-19.  In

6  this case, Plaintiffs had several means of accessing a copy of the express warranty, including the

7  hard copy that was clearly placed in the top packaging of the computer box.  They were able to

8  review the warranty upon purchase and to return the product if they were dissatisfied with the

9  warranty's limitations.  *See Tietsworth v. Sears, Roebuck & Co.*, 2009 WL 3320486, at *10 (N.D.

10 Cal. Oct. 13, 2009) (Although plaintiffs were "not informed of the language of the warranty until

11 the [products] were delivered," they "were provided with a ninety day period in which to return

12 the Machines 'for any reason.'").

13              B. Unconscionable Warranty Provision

14         Plaintiffs also claim that the express warranty's limitations are unconscionable because

15 the warranty is presented in the form of a non-negotiable contract of adhesion, which contains a

16 durational limitation that Apple enforces with respect to a known, latent defect.  Apple argues

17 that neither contracts of adhesion nor durational limitations on warranties are per se

18 unenforceable or unconscionable, in particular where the law authorizes such limitations

19 expressly.

20         "Unconscionability has both a procedural and a substantive element." *Aron v. U-Haul Co.*

21 *of California*, 143 Cal. App. 4th 796, 808 (2006) (citing *Armendariz v. Foundation Health*

22 *Psyhcare Services, Inc.*, 24 Cal.4th 83, 114 (2000)).  The procedural element focuses on factors

23 of oppression and surprise.  *Id.* (internal citation omitted).  Oppression arises from an inequality

24 of bargaining power which results in no real negotiation and an absence of meaningful choice.

25 *Id.* (internal quotation and citation omitted).  Plaintiffs focus on the oppression element, alleging

26 that Apple's standardized formulation is given to buyers post-sale and prohibits any negotiation

27 over the terms of the limitation.

28         However, while the terms of the warranty are non-negotiable, Plaintiffs do not allege that

7

1   they lacked other options for purchasing laptop computers or for obtaining additional warranty

2   protection from Apple itself.  *See Dean Witter Reynolds, Inc. v. Super Ct.*, 211 Cal. App. 3d 758,

3   768 (1989) (finding that a "claim of oppression may be defeated if the complaining party had

4   reasonably available alternative sources of supply from which to obtain the desired goods ... free

5   of the terms claimed to be unconscionable").  Nor do Plaintiffs claim that they were "surprised"

6   by the terms of the express warranty.  *See Aron*, 143 Cal. App. 4th at 808.  Because the terms of

7   the limitation are prominent in the warranty text, and consumers may choose to buy laptop

8   computers from other sellers or to extend Apple's automatic one-year warranty, Plaintiffs have

9   not shown that the warranty is procedurally unconscionable.

10       Substantive unconscionability focuses on the actual terms of an agreement and whether

11   the agreement creates overly harsh or one-sided results that shock the conscience.  *Aron*, 143 Cal.

12   App. 4th at 808.  Plaintiffs allege that the limitation at issue here is unconscionable because

13   Apple knew of the latent defect at the time of sale and nonetheless continued selling a defective

14   product while conceding its intention to discontinue the product line in favor of its next

15   generation laptops.  Plaintiffs rely upon *Carlson v. General Motors Corp.*, 883 F.2d 287 (4th Cir.

16   1989) for the proposition that a complaint alleging manufacturer's knowledge of a latent defect

17   and simultaneous enforcement of a durational limit on the warranty may be sufficient at the

18   pleading stage to state a claim of substantive unconscionability.  *Carlson*, however, was not

19   based on California law.  At most, the court held that in some circumstances, whether contractual

20   language is substantively unconscionable may require parties to "present evidence of the

21   circumstances surrounding the original consummation of their contractual relationship."  883

22   F.2d at 292-93.  These "circumstances" involve procedural aspects of unconscionability, which

23   as discussed above are insufficiently pled.

24       Because the facts informing the Court's analysis of unconscionability appear to be fully

25   developed, it does not appear reasonably likely that Plaintiffs could cure the defects in their

26   pleading by amendment.  Accordingly, Plaintiff's warranty claim will be dismissed without leave

27   to amend.

28

Case Nos. 08-4969 & 09-1649
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART
(JFEX2)

1    **2. UCL Claim**

2    Plaintiffs renew their allegations that Apple engaged in unlawful and unfair business acts

3    or practices under the UCL.  They also add a claim under the "fraudulent" prong of the UCL.

4    SAC ¶¶ 84-89, 91.  The UCL prohibits "any unlawful, unfair or fraudulent business act or

5    practice and unfair, deceptive, untrue or misleading advertising."  Cal. Civ. Code § 17200.

6    Accordingly, "[a]n act can be alleged to violate any or all of the three prongs of the UCL –

7    unlawful, unfair, or fraudulent."  *Berryman v. Merit Prop. Mgmt., Inc*., 152 Cal. App. 4th 1544,

8    1554 (2007).  Although their claims arise under state law, Plaintiffs' allegations are subject to the

9    pleading requirements of the Federal Rules.  In particular, their allegations as to the fraud prong

10   must meet the heightened pleading requirements of the Federal Rule of Civil Procedure 9(b).  *See*

11   *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (If "the claim is said to

12   be "grounded in fraud" or to "sound in fraud," [then] the pleading of that claim as a whole must

13   satisfy the particularity requirement of Rule 9(b).")

14          A.    Unlawful

15   For an action based upon an allegedly unlawful business practice, the UCL "borrows

16   violations of other laws and treats them as unlawful practices that the unfair competition law

17   makes independently actionable."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20

18   Cal. 4th 163, 180 (1999).  The Court previously dismissed Plaintiffs' claim under Cal. Civ. Code

19   § 17200 because Plaintiffs failed to state a cognizable claim under another state statute, such as

20   Cal. Com. Code § 2314.  Aug. 21 Order 9:16-18.  Plaintiffs argue that the SAC now pleads a

21   violation of Cal. Com. Code § 2314 based upon Apple's actions in selling a product with a

22   known, latent defect.

23   Section 2314 provides an implied warranty of merchantability "[u]nless excluded or

24   modified" under § 2316. Cal. Com. Code § 2314.  Plaintiffs have not adequately alleged an

25   exception to Apple's express warranty limitation under § 2316 and therefore have failed to state a

26   claim for breach of implied warranty under § 2314.  Without a predicate violation, the alleged

27   violation of Cal. Com. Code § 2314 fails as a matter of law, and the UCL claim as to the

28   unlawful prong cannot be sustained.

9

1          B.     Unfair

2          A UCL claim predicated on unfair business practices may be grounded upon a violation

3  of a statute, or be a "standalone" claim based on an alleged act that "violates established public

4  policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers

5  which outweighs its benefits." *McKell v. Washington Mut., Inc*., 142 Cal. App. 4th 1457, 1473

6  (2006). Plaintiffs argue that a determination of whether a business act or practice is unfair

7  "requires a review of the evidence from both parties ... [and] thus cannot usually be made [at the

8  pleading stage]." *See id.* at 1473. Plaintiffs also contend that although they satisfy the

9  heightened pleading requirements of Rule 9(b), their UCL claims for unfair business practices do

10  not sound in fraud, and thus need not meet the heightened pleading requirement. *See Vess*, 317

11  F.3d at 1104. Defendants argue that the "unfair" claim is subject to Rule 9(b), because the

12  complaint alleges a unified course of fraudulent conduct. *See Hovsepian v. Apple, Inc.*, 2009 WL

13  5069144 *4 (N.D. Cal. Aug. 21, 2009) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125

14  (9th Cir. 2009)).

15          The SAC alleges that Apple unfairly "failed to exercise reasonable care to test the

16  memory slots in its PowerBook computers prior to sale" and  "continued to sell" those computers

17  even after learning that the memory slots were defective. Opp'n 19:22-27; SAC ¶¶ 86, 87.

18  Plaintiffs also allege that Apple "failed to repair or replace the defective laptops ... when they

19  were brought in for repair as per their one-year warranty or Apple Care extended protection."

20  SAC ¶ 88. Apple suggests that the latter allegation is "deliberately ambiguous" and, if implying

21  that Apple should have repaired memory slots of computers that were brought in for other issues

22  during the warranty period, cannot be deemed unfair when there was no complaint about memory

23  malfunction at the time. Reply to Opp'n 12:8-23.

24          Even accepting Plaintiffs' argument that their claim under the unfair prong stands

25  independently of the fraud allegations and is not subject to Rule 9(b) pleading requirements, the

26  SAC still fails to state a claim. Under the unfair prong of the UCL, Plaintiffs must allege that

27  "the consumer injury is substantial, is not outweighed by any countervailing benefits to

28  consumers or to competition, and is not an injury the consumers themselves could reasonably

10

1    have avoided." Aug. 21 Order 9:18-21 (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal.

2    App. 4th 824, 839 (2006)).  In its August 21 Order, the Court pointed out that the alleged defect

3    did not manifest until after expiration of the express warranty, and failure to disclose a defect in a

4    product that functions "precisely as warranted throughout the term of its express warranty cannot

5    be characterized as causing a substantial injury to consumers, and accordingly does not constitute

6    an unfair practice under the UCL." Aug. 21 Order 9:22-26 (quoting *Clemens v. DaimlerChrysler*

7    *Corp.*, 534 F.3d 1017, 1026-27 (9th Cir. 2008)).  *See also Daugherty*, 144 Cal. App. 4th at 839.

8            The additional allegations in the SAC still fail to get Plaintiffs past the bar set by *Clemens*

9    and *Daugherty*.  Although Plaintiffs allege that the memory slot defect "exists at the time of

10   manufacture" and "renders the PowerBook substantially certain to malfunction during the

11   computer's useful life," SAC ¶ 40, Plaintiffs do not allege that the computers failed to function

12   as warranted during the warranty period, or that Apple failed to repair a memory slot problem

13   while a computer was still under warranty.  Only one of the named Plaintiffs – Wagner – implies

14   that the memory slot defect may have manifested prior to expiration of the warranty:

15              While covered under Apple Care, [Wagner] twice sent his
                computer to Apple to repair other issues. He purchased two 1GB
16              SO-DIMMs memory expansion from the Apple Store in March of
                2006. He noticed at times that his computer appeared sluggish. He
17              had not been told by Apple about the RAM slot defect, even when
                his machine was being repaired by Apple for other issues. In
18              January of 2009, Mr. Wagner's computer stopped making a startup
                tone. Upon opening the "about this Mac" tab, Mr. Wagner learned
19              his computer was only recognizing 1GB of RAM. He does not
                know how long his PowerBook failed to recognize his lower RAM
20              slot.

21   SAC ¶¶ 67-68.

22           It is unclear from the SAC whether Wagner alerted Apple as to the "sluggish" problem, or

23   whether that problem only emerged after he had twice had the computer repaired for other issues,

24   in which case there would have been no basis upon which to expect Apple to inform him about

25   the RAM slot defect.  Wagner did not learn that his lower RAM slot was not recognized until

26   January 2009, after expiration of the three-year Apple Care extended warranty and nearly three

27   years after he purchased the memory expansion in March 2006.  Moreover, Wagner's account

28   falls far short of alleging substantial injury to all members of the putative class.

11

1        C.      Fraudulent

2        A claim based upon the fraudulent prong of the UCL may be brought based upon conduct

3   akin to common-law fraud or an alleged course of conduct that is likely to deceive the public.

4   *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1274 (2006) ("A violation can be

5   shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any

6   damage."). Accordingly, Plaintiffs must allege with specificity that Defendants'

7   misrepresentations or omissions were likely to deceive members of the public. *Daugherty*, 144

8   Cal. App. 4th at 838.

9        Plaintiffs allege that Apple engaged in "active concealment and nondisclosure of material

10  information about the memory slot defect." Opp'n 15:16-17. The key alleged omissions and

11  misrepresentations include failing to inform consumers of the defect and continuing to sell a

12  product that Apple knew to contain a defect that would cause the product to malfunction during

13  its expected useful life. *See* SAC  ¶¶ 87, 88. Apple allegedly engaged in this practice because it

14  "secretly planned to discontinue the PowerBook brand." *Id.* ¶ 36. Plaintiffs argue that the SAC

15  satisfies the heightened pleading standard under Rule 9(b) because they allege: (1) what the

16  omissions were (information regarding the memory slot defect; SAC ¶¶ 31, 32); (2) the person

17  responsible for the failure to disclose (Apple; *id.*); (3) the context of the omissions and the

18  manner in which the omissions misled the plaintiff (RAM expansion was material to a

19  consumer's PowerBook purchase, and memory slot failure will not attract notice until after

20  purchase; *id.* ¶¶ 24-26); and (4) what the defendant obtained through the fraud (unjust

21  enrichment) (citing *Watts v. Jackson Hewitt Tax Service Inc.*, 579 F. Supp. 2d 334, 350

22  (E.D.N.Y. 2008)).

23       However, conspicuously absent from the SAC are specific allegations establishing a duty

24  to disclose the defect on the part of Apple. *See Daugherty*, 144 Cal. App. 4th at 838 (rejecting

25  plaintiffs argument that Honda's failure to disclose a defect in the engine at the time of sale and

26  failure to give proper notice of the potential for oil leaks were "likely to deceive those customers

27  into believing that no such defect exists"). *See also Hovsepian v. Apple, Inc.*, 2009 WL 5069144

28  at *5 (N.D. Cal. Aug. 21, 2009) (requiring plaintiffs to allege specific representations made by

1   Apple with respect to the LCD screen that would give rise to a duty to disclose the defect

2   alleged); *Tietsworth,* WL 3320486 at *8 (finding that if the defendants "did not make any

3   misrepresentations" regarding the allegedly defective component of the washing machines, they

4   "owed no affirmative duty to plaintiffs to disclose any alleged defect" with that component).

5   Plaintiffs seek to distinguish *Hovsepian* and *Tietsworth* by including evidence of consumer

6   postings on the Apple website beginning in late 2004.  These postings from affected consumers

7   memorialize conversations between consumers and Apple personnel.  Among other things, they

8   accuse Apple of removing a thread of 350+ complaints about the memory slot defect from its

9   website.  SAC ¶¶ 31-32.  Plaintiffs also point out that in 2006, Apple initiated the PowerBook

10  Memory Slot Repair Extension Program for a limited number of PowerBooks manufactured in

11  2005 but did not notify PowerBook purchasers generally of the program.  *Id.* ¶¶ 44-45.  Plaintiffs

12  contend that by early 2005, Apple must have known and had to be actively concealing

13  information relating to the memory slot defect.  They argue that because none of the Plaintiffs

14  purchased a PowerBook computer before mid-2005, the omission must have been material, since

15  the RAM expansion feature was a material consideration in the purchase.  *See id.* ¶¶ 24-25.

16          Plaintiffs' argument is persuasive as far as it goes, but their allegations still fall short of

17  establishing a duty on Apple's part to disclose the memory slot defect.  In *Tietsworth*, the

18  plaintiffs pointed to representations in the owner's manual about the dependability of the

19  washing machines, but could not allege with particularity any representations regarding the

20  allegedly defective Electronic Control Boards.  *S ee* 2009 WL 3320486  at *4.  Similarly, in

21  *Hovsepian*, the Court found inadequate under Rule 9(b) the plaintiffs' allegations that Apple had

22  a duty to disclose the LCD screen defect because it had exclusive knowledge of and actively

23  concealed the alleged defect.  *See* 2009 WL 5069144 at *3.  In this case, Plaintiffs allege

24  particular representations made by Apple as to the memory expansion feature of the PowerBook

25  brand.  *See, e.g.*, SAC ¶ 26 ("For a considerable performance improvement ..., the memory in the

26  12-inch model can be expanded to 1.25Gb, and the 15-inch and 17-inch models can

27  accommodate up to 2GB. Both the 15-inch and 17-inch models come with 512MB of memory ...

28  leaving a slot open for future memory upgrades.").

13

1    To maintain a claim under the fraudulent prong of the UCL, Plaintiffs must be able to

2    show that reasonable consumers "had an expectation or an assumption about" the functionality of

3    the memory slots. *See Daugherty*, 144 Cal. App. 4th at 838, citing *Bardin v. DaimlerChrysler*

4    *Corp.*, 136 Cal. App. 4th 1255, 1275 (2006).  In its August 21 Order, the Court held that

5    Plaintiffs "must allege something more than the bare fact that Apple stated that the PowerBook

6    could support 2 GB of memory." Aug. 21 Order 11:9-10.  Without such a representation,

7    Plaintiffs' expectation regarding the ability to expand PowerBook computer memory is akin to

8    that of the consumers in *Daugherty*, in which the plaintiffs could expect only "that [the product]

9    would function properly for the length of [the] express warranty." *See Daugherty,* 144 Cal. App.

10    4th at 838.  Representations by Apple that memory can be expanded to "accommodate up to

11    2GB" do not suffice.  Apple's statement in the PowerBook Technology Overview that the design

12    "leav[es] a slot open for future memory upgrades" is closer to being an actionable statement as to

13    the *durability* of the extra memory slot beyond the warranty period.

14    Similarly, the complaints posted on Apple's consumer website merely establish the fact

15    that some consumers were complaining.  By themselves they are insufficient to show that Apple

16    had knowledge that the memory slot in fact was defective and sought to conceal that knowledge

17    from consumers.  The only allegation arguably reflecting an intent to conceal is that Apple

18    deleted a discussion thread containing over 350 posts from its website.  SAC ¶ 32.  Like the

19    conversation between a single washing machine purchaser and a store representative in

20    *Tietsworth,* in which the representative allegedly stated that the specific machine could be

21    expected to last up to eight years, this single statement is insufficient to support a claim of

22    corporate fraud.  *See Tietsworth*, 2009 WL 3320486  at *FN3.  At most the posting establishes

23    knowledge that there were *complaints* about the memory card problem.

24    Plaintiffs contend that pursuant to *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App.

25    4th 1235, 1257 (2009), a court must find that plaintiffs have stated a claim for relief under the

26    fraudulent prong of the UCL if the court cannot find, as a matter of law, that members of the

27    public were *not* likely to be deceived by defendant's alleged conduct.  Unlike *Morgan*, in which

28    AT&T allegedly sold an expensive line of cell phones with multi-year service contracts that it

14

1    knew would be rendered "essentially useless" by network improvements before the contracts

2    expired, Plaintiffs have not alleged any specific conduct of Apple that would be likely to deceive

3    consumers.  *See id.* at 1256.  Conclusory statements that Apple failed to disclose the defect

4    because it was secretly planning with Intel to retire the line of products do not meet the

5    heightened pleading standard for claims sounding in fraud.  However, because there is a

6    reasonable possibility that Plaintiffs could provide additional factual support for this claim, leave

7    to amend will be granted.

8          **3.  Unjust Enrichment**

9          Plaintiffs renew their claim for unjust enrichment, reasserting the allegations first made in

10   the Berenblat Plaintiffs' FAC.  In its August 21 Order, the Court held that a claim for unjust

11   enrichment cannot stand alone without a cognizable claim under a quasi-contractual theory or

12   some other form of misconduct.  Aug. 21 Order 10:4-6 (citing *Jogani v. Superior Court*, 165 Cal.

13   App. 4th 901, 911 (2008) ("[U]njust enrichment is not a cause of action. Rather, it is a general

14   principle underlying various doctrines and remedies.")).  *See* also *Melchior v. New Line Prods.,*

15   *Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("'The phrase "Unjust Enrichment" does not describe a

16   theory of recovery, but an effect: the result of a failure to make restitution under circumstances

17   where it is equitable to do so.'") (citations omitted)).  Accordingly, the viability of Plaintiffs'

18   claim for unjust enrichment depends upon the viability of their other claims.  *Sanders v. Apple*

19   *Inc.*, No. C 08-1713, 2009 WL 150950, at *9 (N.D. Cal. Jan. 21, 2009).  Because it concludes

20   that Plaintiffs still have failed to state a cognizable claim with respect to their other claims for

21   relief, the Court again will dismiss their claim for unjust enrichment, with leave to amend.

22

23

24

25

26

27

28

Case Nos. 08-4969 & 09-1649
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART
(JFEX2)

1

**IV.  ORDER**

2       Good cause therefor appearing, the motion to dismiss is GRANTED without leave to

3   amend as to Plaintiffs' claim of breach of warranty, and GRANTED with leave to amend as to

4   Plaintiffs' claims under the UCL and for unjust enrichment.  Any amended complaint shall be

5   filed within thirty (30) days of the date of this order.

6

7

8   DATED:   April 7, 2010

9                                                                     _____
                                                                      JEREMY FOGEL
10                                                                    United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16